STANTON BRADSHAW *vs.* SOUTH BOSTON RAILROAD COMPANY.

Suffolk. March 24. — Sept. 7, 1883. DEVENS & W. ALLEN, JJ., absent.

If a corporation, owning several lines of street cars, has a practice of giving transfer checks to passengers, who, after having ridden on one of its lines, desire to ride on another line, such checks differing in language and color according to the line on which they are to be used, and not being good on any line except the one indicated, and a passenger, who is familiar with this practice, receives, by the mistake of the conductor of a car on which he has ridden, without reading it, a wrong transfer check, which, upon presentation to the conductor of a car on the second line, is declined on that ground, the passenger cannot, after having refused to pay his fare to the second conductor and been by him expelled from the car, maintain an action against the corporation for such expulsion.

TORT for being expelled from one of the defendant's cars. Trial in the Superior Court, without a jury, before *Colburn*, J., who reported the case for the determination of this court, in substance as follows :

The defendant is a common carrier of passengers, for hire, owning lines of street cars between South Boston and Boston proper, and, among others, one running over Federal Street Bridge, between Boston and City Point in South Boston by what is called the Bay View route, and another running over Dover Street Bridge between Boston and said City Point by way of Broadway. None of the Dover Street cars run over the Bay View route, and none of the Bay View cars run over Dover Street. When a passenger on the Bay View line wishes to enter the city by way of Dover Street, it is the practice of the defendant, after he has paid his fare and arrived at the proper place for changing cars, to give him a check, which states that it is good, only on the day of its date, for one continuous ride, for Bay View passengers, from Dorchester Avenue to the Providence Depot. When a passenger on the Dover Street line wishes to go to some place in South Boston on the Bay View line, it is the practice, after he has paid his fare and arrived at the proper place for changing cars, for the defendant to give him a check, which states that it is good, only on the day of its date, for one continuous ride from Dorchester Avenue to City Point via Bay View. The upper left quarter and the lower right quarter of the first-mentioned checks are colored red, and the corresponding quarters

of the other checks are colored yellow. The plaintiff was familiar with the practice above mentioned, and had received and used such checks, but had never read them, though able to read, and had never noticed the difference in the color of the checks.

In the afternoon of May 15, 1881, the plaintiff entered one of the Bay View cars of the defendant at the corner of Eighth Street and Dorchester Street in South Boston, intending to go to the corner of Dover Street and Washington Street in Boston, and thence over the Metropolitan Horse Railroad to some point on that line. He paid his fare on the defendant road, and also sufficient to pay for a transfer check to the Metropolitan road, which he received in due form. He told the conductor that he wished for a check to take him over the Dover Street line, which the conductor promised to give him when they arrived at the proper place for changing cars. At the corner of Dorchester Avenue and Broadway he left said car, and, as he left, the conductor handed him the last-named check, by mistake, in place of the first-named. After waiting a short time, a Dover Street car came along, which he entered, and rode as far as the bridge, when the conductor of the car came for his fare, and he tendered him said check. The conductor refused to accept it, (though the plaintiff informed him of the circumstances under which he received it, as above stated,) and required him to pay a fare or leave the car. The plaintiff refused to pay a fare, and was forced by said conductor to leave the car. No unnecessary force was used.

Upon these facts, the judge ruled that the plaintiff was not entitled to maintain his action, and found for the defendant.

*W. Howland*, for the plaintiff.

*J. C. Davis*, for the defendant, cited *Townsend* v. *New York Central & Hudson River Railroad*, 56 N. Y. 295; *Weaver* v. *Rome, Watertown & Ogdensburg Railroad*, 3 Th. & C. 270; *Petrie* v. *Pennsylvania Railroad*, 13 Vroom, 449; *Frederick* v. *Marquette, Houghton & Ontonagon Railroad*, 37 Mich. 342; *Chicago, Burlington & Quincy Railroad* v. *Griffin*, 68 Ill. 499; *Shelton* v. *Lake Shore & Michigan Southern Railway*, 29 Ohio St. 214; *Yorton* v. *Milwaukee, Lake Shore & Western Railway*, 54 Wis. 234.

C. ALLEN, J. It may be assumed, as the view most favorable to the plaintiff, that the defendant was bound by an implied

contract to give him a check showing that he was entitled to travel in the second car, and that it failed to do so ; in conse- quence of which he was forced to leave the second car.   It does not appear that the defendant had any rule requiring conductors to eject passengers under such circumstances.   We may, how- ever, take notice of the fact that it is usual for passengers to provide themselves with tickets or checks, showing their right to transportation, or else to pay their fare in money.   It was the practice for passengers on the defendant's road to receive and use such checks ; and the plaintiff intended to conform to this practice.

The conductor of a street railway car cannot reasonably be required to take the mere word of a passenger that he is entitled to be carried by reason of having paid a fare to the conductor of another car ; or even to receive and decide upon the verbal state- ments of others as to the fact.   The conductor has other duties to perform, and it would often be impossible for him to ascertain and decide upon the right of the passenger, except in the usual, simple and direct way.   The checks used upon the defendant's road were transferable, and a proper check, when given, might be lost or stolen, or delivered to some other person.   It is no great hardship upon the passenger to put upon him the duty of seeing to it, in the first instance, that he receives and presents to the conductor the proper ticket or check ; or, if he fails to do this, to leave him to his remedy against the company for a breach of its contract.   Otherwise, the conductor must investigate and deter- mine the question, as best he can, while the car is on its passage. The circumstances would not be favorable for a correct decision in a doubtful case.   A wrong decision in favor of the passenger would usually leave the company without remedy for the fare. The passenger disappears at the end of the trip ; and, even if it should be ascertained by subsequent inquiry that he had obtained his passage fraudulently, the legal remedy against him would be futile.   A railroad company is not expected to give credit for the payment of a single fare.   A wrong decision against the passen- ger, on the other hand, would subject the company to liability in an action at law, and perhaps with substantial damages.   The practical result would be, either that the railroad company would find itself obliged in common prudence to carry every passenger

who should claim a right to ride in its cars, and thus to submit to frequent frauds, or else, in order to avoid this wrong, to make such stringent rules as greatly to incommode the public, and deprive them of the facilities of transfer from one line to another, which they now enjoy.

It is a reasonable practice to require a passenger to pay his fare, or to show a ticket, check or pass; and, in view of the difficulties above alluded to, it would be unreasonable to hold that a passenger, without such evidence of his right to be carried, might forcibly retain his seat in a car, upon his mere statement that he is entitled to a passage. If the company has agreed to furnish him with a proper ticket, and has failed to do so, he is not at liberty to assert and maintain by force his rights under that contract; but he is bound to yield, for the time being, to the reasonable practice and requirements of the company, and enforce his rights in a more appropriate way. It is easy to perceive that, in a moment of irritation or excitement, it may be unpleasant to a passenger who has once paid to submit to an additional exaction. But, unless the law holds him to do this, there arises at once a conflict of rights. His right to transportation is no greater than the right and duty of the conductor to enforce reasonable rules, and to conform to reasonable and settled customs and practices, in order to prevent the company from being defrauded; and a forcible collision might ensue. The two supposed rights are in fact inconsistent with each other. If the passenger has an absolute right to be carried, the conductor can have no right to require the production of a ticket or the payment of fare. It is more reasonable to hold that, for the time being, the passenger must bear the burden which results from his failure to have a proper ticket. It follows that the plaintiff was where he had no right to be, after his refusal to pay a fare, and that he might properly be ejected from the car.

This decision is in accordance with the principle of the decisions in several other States, as shown by the cases cited for the defendant; and no case has been brought to our attention holding the contrary.            *Judgment for the defendant.*