ELLIS, Respondent, vs. THE MILWAUKEE CITY RAILWAY COMPANY, Appellant.

*October 15 — November 3, 1886.*

*Street railways: Ordinance fixing rate of fare: Separate lines of cars running to different termini.*

1. A regulation or custom of a street railway company by which several distinct and separate lines of cars are run between different *termini*, is reasonable.

2. A municipal ordinance provided that the rate of fare on any horse railway in the city should not exceed five cents. When the ordinance was passed the defendant company was operating a single line of railway, all its cars running between the same *termini*. Afterwards it constructed other lines diverging from the main line, and separate cars were run over the main line and diverging lines to the several different *termini*. *Held*, that the ordinance did not give a passenger the right, upon payment of a single fare of five cents, to ride upon a car bound for one *terminus*, and then, at the point of divergence, to get upon another car and ride to a different *terminus;* and a passenger refusing to pay additional fare upon the second car might lawfully be ejected therefrom.

APPEAL from the County Court of *Milwaukee* County.

The facts are stated in the opinion. The defendant appealed from a judgment in favor of the plaintiff.

For the appellant there was a brief by *Finches, Lynde & Miller*, and oral argument by *Mr. B. K. Miller, Jr.*

For the respondent the cause was submitted on a brief signed by *F. P. Hopkins* for *Small & Hopkins*.

ORTON, J. The plaintiff and respondent on this appeal, in June, 1885, entered one of the cars of the defendant company at the corner of Fourth avenue and Mitchell street, in the south part of the city of Milwaukee, for the purpose of going to the base-ball ground at the corner of Twelfth and Wright streets, in the north part of said city, to which point one of the cars of said company ran on one line of its road. He was informed by the conductor, when he

offered to pay his fare of five cents, that the car he was .on did not run to that point, and that to go there he would have to take another car, but that he could ride on that car as far as it ran on that line, and then he would have to take another car and pay another fare of five cents on the same. The plaintiff then asked the conductor if he would not give him, at the point of divergence, a transfer ticket which would entitle him to ride to his destination, and the conductor told him that he could not, and he then paid his fare. At the point where the road to the base-ball ground diverged from the line on which that car ran, the plaintiff again demanded a transfer ticket, which was again refused, and he left the car, and waited a short time for the arrival of another car bound for his destination, and then entered that car. The conductor of that car asked the plaintiff for his fare, and he replied that he had paid his fare on the Third-street car and refused to pay more fare. He was informed that if he did not pay he must leave the car, and he replied that he would not do so. The conductor delayed putting him off until he had made three other demands for his fare, and he had refused, and then he stopped the car at a crossing and by no great display of force put the plaintiff off. He landed on his feet, and suffered no injury, although he and the conductor were somewhat excited. After being thus put off, he almost immediately jumped on the car again, and paid his fare under protest, and rode to his destination.

On the 23d day of October, 1871, the common council of the city passed an ordinance amending an ordinance of March 26, 1866, to amend an ordinance entitled "An ordinance to authorize the construction and operation of certain horse railways in the city of Milwaukee," passed May 29, 1865, as follows:

"Sec. 2. Hereafter the rate of fare for a single passenger in any horse railway operated within the city of Milwaukee shall not exceed the sum of five cents."

This ordinance was declared to have been passed for the sole purpose of preventing extortion by the said company. At the time the ordinance was passed this company was operating only one line of railway, north and south, near the center of the city, and near the Milwaukee river, and all cars thereon went to the same points of termination, and, so far as this company was concerned, this ordinance affected only this line of road as then operated. Afterwards, and before the year 1883, this company had constructed at least four lines of road diverging from this main line towards the south and towards the north to as many points of termination and localities, and one of these lines ran to the base-ball grounds, the destination of the plaintiff. The car upon which he took passage did not run to that point, but to a point south of and quite distant from it. When these lines of road were built, by a regulation of the company as many different lines of cars ran upon the main line and to these several terminations, and these various lines were operated as distinct and separate lines of road. When, in 1882, the company was about to construct a line of road diverging from the old main line and running along Chestnut street, the common council passed an ordinance authorizing such extension, and providing that such new line should be operated in connection with the main line, and that only one fare of five cents should be charged for the whole route, and that at the point of intersection a transfer ticket should be given to the passenger going on such new line. Since the other diverging lines have been built and operated no ordinance has been passed relating thereto, in respect to rates of fare or transfer tickets, but these several lines are left to be governed, if at all, by the ordinance of 1871, as to the rate of fare. It appears that the company, on the completion of these several lines, for one year only adopted the plan of giving transfer tickets on all of them; but they found that, under such a regulation, passengers

could defraud the company by getting on a line, going west a short distance, then going south a short distance, and then going back, and passing around a circle; and the company then abandoned such a general regulation, and has since given transfer tickets only on the Chestnut street line, as required by said ordinance. .

This is a brief and substantially correct statement of the case. The plaintiff brought this suit to recover damages for being thus expelled from the car, and recovered $150.

On the conclusion of the plaintiff's testimony, as stated substantially above, there was a motion for a nonsuit, and, at the conclusion of the evidence on both sides, the defendant company moved for a verdict by direction of the court, which were denied.

1. We think that the regulation or custom of the company, by which several district and separate lines of cars are run between different *termini*, is a reasonable one. The various lines could not be operated in any other way to accommodate the traveling public. *Yorton v. M., L. S. & W. R. Co.* 54 Wis. 234.

2. We are quite confident that the ordinance of 1871, fixing the rate of fare, has no application to the connecting lines of road afterwards constructed. The rates of fare of passengers on the road of such a corporation ought to be reasonable, affording a reasonable compensation to the common carrier, and imposing no unreasonable burden upon the passenger. *Att'y Gen. v. Railroad Co's*, 35 Wis. 425. It may be conceded that the common council of Milwaukee had the right and authority to fix such reasonable rate by ordinance; but such rate should be fixed so as to give the company reasonable compensation for its service, in view of the location and length of its road. In respect to railways operated by steam-power through the country, such rates for passengers, where fixed by law, are generally, if not always, rated per mile. In such case, the length of lines and distance of travel

would make no difference. On horse railways, the fare is generally fixed at a certain sum for a given line of road, arbitrarily; but should, of course, be so fixed as to be reasonable, and proportionate to the service rendered to the passenger and to the profits of the company. It is presumed that the common council fixed the rate, in 1871, in view of this rule, and took into consideration the location, business, and length of the main line then in operation. Suppose the legislatures of Illinois and Wisconsin had seen fit to fix the passenger fare on the Chicago & Northwestern Railway at the arbitrary rate of five dollars as soon as the road had been completed from Chicago to Madison, and that company had then no other line. Afterwards the line was extended, and many intersecting lines had been built. Would that rate continue, by the mere force of such a law, as the rate from Chicago to the distant terminus of its line and to any *termini* of connecting lines? If so, the rate would be most unreasonable against the company, and the company would derive no compensation or profit whatever from such extended and new lines. If the rate was reasonable when the line had its *termini* at Chicago and Madison, as it must be presumed it was, then such a fixed rate becomes more and more unreasonable as the line is extended, and connecting lines are built, and increased service is rendered, at great additional cost to the company. So, in this case, the common council fixed this arbitrary rate, presumed then to be reasonable, on the old and main line of road. That line has been extended, and connecting lines built, since such rate was fixed. That rate was fixed without any reference to the present state of things, or new lines, and with reference only to the roads then existing; and hence we say that the ordinance of 1871 has no application to the connecting lines since constructed.

The common council, as the legislative body in respect to

such ordinances fixing the rate of passenger fare over its lines of street railway, has placed such a legislative construction upon the ordinance of 1871 by another ordinance of 1882, by which the same rate is continued on the main line and on the first connecting line, and a transfer ticket required to be given. On the subject of the fare on the main line and the other connecting lines, the common council has not acted. The ordinance of 1871 has been treated as if made with special reference to this road. What has been said would be true of all other roads in their then condition, and in respect to their new lines.

3. It would not seem to be material whether the ordinance of 1871 actually fixed the rate of passenger fare on the main line and over the connecting lines since built, or not; for the company conceded to the plaintiff the right to go upon the car he was on to the end of its route on one of the connecting lines, for the fare he had paid; and also the right to have gone over the main line and the connecting line to his destination for the same fare, if he had taken the proper car of the company which ran on that line. We have already said that the regulation or custom by which these several lines of cars were run on the several lines of road was reasonable and probably necessary. The plaintiff was informed of this regulation before he paid his fare. The company had provided for him cars to his destination, and all he was required to do was to go aboard of such cars. He chose not to do so, but to go aboard of the wrong car, and demand that he might be carried to his destination on one fare of five cents, and to be transferred to another line for that purpose. These matters are proper subjects of legislation by the common council, and until they pass an ordinance changing the rate of fare, or fixing the rate of fare over all the lines of road, and requiring transfer tickets from one road to another to be given to passengers, the traveling public must comply with and

abide by the present regulation.   Such a regulation is bind-
ing upon travelers having knowledge of it.   *Bradshaw v.
South Boston R. Co.* 135 Mass. 407;  *Wakefield v. South Bos-
ton R. Co.* 117 Mass. 544.   In this last case the passenger
had paid his fare on two connecting lines of the road, and
claimed to ride on a third line.   He was ejected from the
third car, and was not allowed to recover.   In *McMahon v.
Third Ave. R. Co.* 47 N. Y. Super. Ct. 282, it was held that
a similar regulation was binding upon a passenger, if known
to him.

The plaintiff could easily have taken the proper car and
gone to his destination on one fare.   But he chose to violate
a reasonable regulation of the company, by going upon the
wrong car and demanding of the conductor a transfer
ticket, which the conductor, by such regulation, had no
right to give, and he knew it.   Until the company's rates
are fixed by law for a transfer of a passenger to another
line of its road, the company has a right to fix such rates as
are reasonable, and there was no evidence in this case that
such rates were not reasonable.   The jury should have been
instructed to find a verdict for the defendant.   If the plaint-
iff had been entitled to recover at all in this case, he was
only entitled to *nominal* damages.   He was ejected from
the car by the conductor, whose duty it was to do so, after
repeated warnings, in an unusually careful and prudent
manner, without inflicting upon him any personal injury.
*Yorton v. M., L. S. & W. R. Co., supra.*   But he was not
entitled to recover, and therefore the excessive verdict is
immaterial.

*By the Court.*— The judgment of the county court is re-
versed, and the cause remanded with directions to that court
to grant a new trial in the cause.