Mr. Chief Justice Bingham,
of the Supreme Court of •sthe District of Columbia, who sat with the court in the hearing of this cause, in place of Mr. Justice Morris, delivered the opinion of the Court:
It seems to be manifest that the first assignment of error raises the only material question to be now considered, because in order to sustain the instruction of the court for the jury to return a verdict for the defendant, every material fact which the evidence of the plaintiff tends to ■prove must be regarded by us as though fully proved. The plaintiff’s own testimony was to the effect that the ticket which she offered to the conductor was the identical ticket which the ticket agent gave to her in exchange for her money, and upon her demand for a ticket from Knoxville to Washington.
*530 This fact must therefore be regarded as true in considering the first assignment of error, and the testimony of the ticket agent that the plaintiff took from the window the wrong ticket cannot be allowed to have any effect in this regard, whatever might have been its weight had the case been submitted to the jury for its determination upon the evidence. So, too, it follows that the claim of counsel for the appellant that the letter of the ticket agent to the female plaintiff should have been admitted because it would tend to discredit the testimony of the ticket agent and would operate as an admission of the appellee that their agent had delivered to the female plaintiff the identical ticket which she had offered to the conductor, is of no importance in determining the question raised by the first assignment of error. The declaration is in trespass,- and the facts which the evidence tended to prove must have been such as if found to be true by the jury would have sustained the cause of action set forth in the declaration.
Assuming, then, that the female plaintiff asked the agent for a ticket from Knoxville to Washington, and paid him the sum which he demanded therefor, and that she received from him the ticket which she afterwards offered to the conductor, in the belief on her part that it was such a ticket as .she had asked and paid for, and that being*' hurried she received a check for her trunk and entered the train; that upon offering her ticket she was told that it was worthless, being the return coupon of an excursion ticket from Washington, to Harper’s Ferry and return limited to two days, and bearing the date of a day some three weeks prior to that day, and waá told that unless she paid her fare she would have to get off the train; and that not having sufficient money to again pay her fare and feeling that she must do as he told her, his manner being harsh and disagreeable, though he offered no physical violence, she left the train when it reached the next station — would these facts entitle the appellants to a verdict?
It is not to be denied that the decisions of courts are *531 not in harmony upon the question of the duty of a conductor of a train on a railroad, and the rights of a passenger under such circumstances. We are of the opinion, however, that much of the apparent conflict disappears upon a careful examination of the cases. There is a class of cases where it has been held that the conductor was justifiable in expelling the passenger when on the cars without a ticket, but who claimed to the conductor and proved on the trial that he had purchased and paid for a passage over' the road of the defendant but had lost his ticket, or it had been prematurely taken up by a conductor of the same company, who had failed to give the passenger any evidence of his right to continue his journey to be presented to a subsequent conductor, or was otherwise without any evidence of his right to be conveyed on the train. As of this class may be cited Bradshaw v. R. R. Co., 135 Mass., 407 ; Shelton v. R. R. Co., 29 Ohio St., 214; Yorton v. R. R. Co., 54 Wis., 234; R. R. Co. v. Griffin, 68 Ill., 499; Townsend v. R. R. Co., 56 N. Y., 295. Included In this class of cases will be found a number where the conductor upon one train had not given the right check to the passenger to enable him to be conveyed on a connecting train, although some of the decisions of this class hold that under such conditions the passenger is entitled to be carried when not himself in fault.
There is a class of cases in which some of the courts have held that the conductor had not the right to expel the passenger where the latter had purchased of and received from the ticket agent a ticket which upon its face appeared to confer the right of passage and all the privileges which the passenger desired and the agent assured him it guaranteed. R. R. Co. v. Winter, 143 U. S., 60; Murdock v. R. R. Co., 137 Mass., 293.
In so far as the law settled by the first of these cases is applicable to the case at bar, we have no alternative but to follow. We quote from the headnotes of that case as follows : “ Plaintiff bought a¡ ticket from Boston entitling him *532 to a passage over the defendant’s road. At the time he informed the ticket agent of his wish to stop off at Olean station, and was then told by the agent that he would have to speak to the conductor about that. Between Bing-hamton and Olean the plaintiff informed the conductor that he wished to stop' over at Olean, and the conductor, instead of giving him a stopover ticket, punched his ticket and told him that was sufficient to give him the right -to stop over at Olean, and afterwards to use the punched ticket between Olean and Salamanca. He made the stop, and taking another train to Salamanca, presented the punched ticket, informing the conductor of what had taken place. The conductor refused to take it and demanded full fare. The payment of this being refused, the conductor stopped the train at the next station and ejected him from it, using such force as was necessary. Held:
“ i. That he, the plaintiff, was rightfully on the train at the time of his expulsion.
2. “That the conductor had no right to put him off for not paying his fare.
“3. That the company was liable for the act of the conductor.”
Much stress was laid by Justice Lamar, who delivered the opinion of the court, on the fact that the conductor who expelled Winter from the car, knew that the ticket had been punched by the conductor of the train that had next preceded him, and therefore had not been used between Olean and Salamanca, and that while there was a rule of the company that conductors were not to receive punched tickets, the evidence showed that they were in the constant habit of doing so. It appears, too, that the court held that the oral representations of the ticket agent formed part of the contract between the company and Winter, and that the latter having done all that he was directed by the agent to do to secure stopover privileges at Olean, and all that he was informed that it was necessary for him to do, and his ticket guaranteeing him a passage from Olean to *533 Salamanca, he must be held to' be rightfully on the train and could not be lawfully expelled.
The important difference between the case of Winter and the one at bar consists in the fact that while Winter had with him a ticket which entitled him to a passage, Mrs. Baggett did not. The ticket which she presented to the conductor was no more evidence of her right to a passage on the car which she entered than would have been so much blank paper; neither was it any more effective as evidence that she had contracted with the agent at Knoxville for a ticket from thence to Washington.
The case of Bradshaw v. R. R. Co., 135 Mass., 407, in its essential facts is very much like this. The substantial facts as stated in the headnotes of that case are: “ If a corporation owning several lines of street cars has a practice of giving transfer checks to passengers who, after having ridden on one of its lines desire to ride on another line, such checks differing in language and color, according to the line on which they are to be used, and not being good on any other line except the one indicated, and a passenger who is familiar with this practice, receive, by the mistake of the conductor of a car upon which he has ridden, without reading it, a wrong transfer check, which, upon presentation to the conductor of a car on the second line, is declined on that ground, the passenger cannot, after having refused to pay his fare to the second conductor and been by him expelled from the car, maintain an action against the corporation for such expulsion.”
The opinion was delivered by C. Allen, J., in which he says: “ The conductor of a street railway car cannot reasonably be required to take the mere word of a passenger that he is entitled to be carried by reason of having paid a fare to the conductor of another car; or even to receive and decide on the verbal statements of others as to that fact. The conductor has other duties to perform; and it would often be impossible for him to ascertain and decide upon the right of the passenger, except in the usual simple *534 and direct way. It is no great hardship upon the passenger to put upon him the duty of seeing to it in the first instance that he receive and present to the conductor the proper ticket or check; or if he fails to do this, to leave him to his remedy against the company for a breach of its contract.”
After discussing further the 'difficulties in the way of the conductor rendering proper decisions, Justice Allen says: “The practical result would be either that the railroad company would find itself obliged in common prudence to carry every passenger who should claim a right to ride in its ■ cars, and thus to submit to'frequent frauds, or else in order to avoid this wrong, to make such stringent rules as greatly to incommode the public and deprive them of their facilities of transfer from one'line to another which they now enjoy. It is a reasonable practice to require a passenger to pay his fare, or to show a ticket, a check or pass, and in view of the difficulties above alluded to, it would be unreasonable to hold that a passenger, without such evidence of his right to be carried, might forcibly retain his seat in a car upon his mere statement that he is entitled to a passage. . . The two supposed rights are in fact inconsistent with each other. If the passenger has an absolute right to be carried, the conductor can have no right to require the production of a ticket or the payment of fare. It is more reasonable to hold that for the time being the passenger must bear the burden which results from his failure to have a proper ticket. It follows that the plaintiff was where he had no right to be, after he refused to pay a fare, and that he might properly be ejected from the car. This decision is in accordance with the principle of the decisions in several other States, as shown by the case cited by the defendant, and no case has been brought to our attention holding the contrary.”
The case of Bradshaw v. R. R. Co. was decided September, 7, 1883. In June, 1884,.the same court decided the case of Murdock v. R. R. Co., supra, and the opinion was also delivered by C. Allen, J. The facts in this case were *535 quite similar in the main features to the case of R. R. Co. v. Winter, supra. Indeed, Justice Lamar, in the latter case, quotes the former as sustaining his view of the law, as it undoubtedly does. Justice Allen in the Murdock case refers to his opinion in the Bradshaw case, maintaining its correctness, and discusses the principles applicable to each. It appears that in the Murdock case the ticket agent gave the passenger two tickets for a passage from Springfield to North Adams, one of them being from Springfield to Chester, and the other from Chester to North Adams, the latter having two ’holes punched therein. Upon inquiry by the passenger the ticket agent explained the effect of the two punched holes, and assured the former that the ticket was perfectly good for a passage from Chester to North Adams. Commenting on this, Justice Allen says: “There was nothing on their face to show the contrary to the plaintiff, and he took and paid for them on the strength of these explanations and assurances of the ticket seller. There was no mistake on the part of either as to where the plaintiff wished to go, or what terms were actually expressed upon the tickets, or what marks or punched holes they bore. The circumstances of there being two tickets and of the holes in one of them, naturally induced inquiry by the plaintiff, and he had no reason to distrust the correctness of the explanation which was given to him. The ticket seller assumed to know, and gave assurances which the plaintiff had a light to rely on, and which he did rely on. If when the conductor refused to accept the punched ticket it had appeared on an inspection of it that there had been a mistake, and that it did not on its face purport to be good for a passage over that part of the defendant’s road, or that the ticket seller had delivered to the plaintiff a good ticket upon some other railroad, or to some place which had already been passed when the mistake was discovered, and it was found that the plaintiff had through inadvertence accepted a ticket which on its face was plainly insufficient, then this case would have fallen within the *536 doctrine of the recent decision in Bradshaw v. South R. R. Co., 135 Mass., 407; and it would have been the duty of the plaintiff to yield for the time being and pay his fare anew, or withdraw from the car. But in the present case such is not the position of the parties.
“As has been seen, the plaintiff was not only not guilty of any negligence in accepting his ticket but he examined it carefully, saw everything there was on it, and received explanation of the meaning of the punched holes, and assurances that the two tickets, in the condition in which they were, would be good for the trip. In such case, there being no mistake or inadvertence on his part, in the respects mentioned, and the tickets which were delivered being in all particulars such as were intended to be delivered, and there being nothing which could be gathered by inspection to show that they were insufficient, and no notice of their insufficiency being given to the plaintiff by anybody, or in any form, until he had already entered upon and practically accomplished his journey over the defendant’s road, he might insist upon being allowed to complete that journey.”
We are inclined to adopt the views of C. Allen, J., before quoted, as a satisfactory exposition of the law applicable to this case. In the light of the law thus understood, it necessarily follows that Mrs. Baggett, who went into the car of the appellee with a ticket which had been given to her, as we must presume, either by the mistake or fraudulent design of the ticket agent, which upon its face showed that it did not and could not furnish any right for her passage from Knoxville to Washington, acted wisely in retiring from the car when directed to do so by the conductor, she declining to again pay her fare. She would not under such circumstances be entitled to remain in the car. Her action might have been against the appellee for the negligence or fraudulent design of the ticket agent, if the above assumption as to. his conduct be true. If, indeed, it should be true that it was the mistake of Mrs. Baggett *537 in carelessly taking the wrong ticket from the window, she would be without remedy, but must bear the consequences of her own careless act. Surely no one would claim that if the ticket came into her possession by her own carelessness, that she had any right to a passage by reason thereof.

We therefore hold that there was no error in the justice presiding at the trial of this cause in the court below directing the jury to return a verdict for the defendant; and that the judgment of the Supreme Court of the District of Columbia must be affirmed, with costs.