# THE WESTERN MARYLAND RAILROAD CO. *vs.* MARIA A. SCHAUN.

*Carriers—Defective Return Ticket Given by Negligence of Conductor— Personal Description of Holder—Expulsion of Passenger.*

The regulation of the defendant railway company concerning excursion tickets between certain points required the conductor of the train on which the ticket was first presented to give to the passenger a return check or ticket, good for use only on that day and by that passenger, on which certain marks were to be made describing the personal appearance of the holder. In this case the plaintiff was a woman, dark, stout and middled aged, but upon surrendering her excursion ticket she received from the conductor a return check in which the holder was described as a woman, light, slight and young, and this check she put in her pocket without examination. When it was presented to the conductor upon the return trip, he refused to accept it on account of the misdescription and plaintiff was put off the train upon her refusal to pay the fare. In an action of tort to recover damages for wrongful expulsion, *held*, that although the misdescription of the plaintiff upon the return ticket was owing to the negligence of the conductor, yet since the ticket was the only evidence of the passenger's right to travel as

between her and the conductor, the latter was justified in refusing to accept that presented by the plaintiff and she is not entitled to recover damages in this action, but must enforce her rights, if any she has, in an action for breach of the contract.

*Held* further, that the fact that the conductor who gave the plaintiff the defective ticket was the same one who, on the return trip, refused to accept it, is not sufficient to prove that he knew that he had given the return ticket containing an erroneous description of the holder, and that the plaintiff was the person who had presented the original ticket.

Appeal from the Court of Common Pleas (RITCHIE, J.) The trial Court gave the following instruction to the jury in lieu of plaintiff's first and second prayers :

If the jury find that on the 18th day of July, 1901, the plaintiff purchased from the defendant a round trip non-transferable ticket from Baltimore to Pen Mar and return, and that said ticket provided that she should, on the outgoing trip surrender said ticket to the conductor and receive from him in lieu thereof a special ticket for the return trip and further provided that such special ticket should by means of punchings on its margin, give a description of the person from whom the original ticket was received, and that such special ticket would not be honored on the return trip unless the person then presenting it should correspond with the description which had been punched thereon.    And shall further find that the plaintiff surrendered her original ticket to the conductor of the outgoing trip, and that he gave her in exchange therefor the special ticket offered in evidence, upon which the brakeman, while assisting said conductor and acting under his direction and in his presence had punched out a description, and further find that said description was not a correct description of the plaintiff from whom the original ticket was received (if the jury so find), and further find that on her return in the evening the train was in charge of the same conductor and that on demand she presented to him the special ticket which she had received from him in the morning (should the jury so find) and that he declined to accept the same for her passage, because the description punched thereon did not correspond with the person of the plaintiff, and demanded payment of a

fare, and upon the refusal to pay such fare, and because of such refusal, he then and there ejected her from the said train, then the plaintiff is entitled to recover.

The jury gave a verdict in favor of plaintiff for $366; upon which judgment was entered.

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*R. E. Lee Marshall* and *J. Hanson Thomas*, for the appellant.

The Pen Mar excursion ticket, purchased by the plaintiff, was a special contract ticket issued at a greatly reduced rate and on special conditions. The plaintiff paid only the reduced rate for which the ticket was issued, and accepted the ticket. The company thereby became bound to carry the plaintiff upon its cars according to the terms of its undertaking, and she on her part *was bound by all the terms and conditions upon which the ticket was issued. Freidenrich* v. *B. & O. R. R.*, 53 Md. 201; *Pennington* v. *P., W. & B. R. R.*, 62 Md. 99.

Among the conditions stated on the face of the ticket was that the ticket issued in exchange for the Baltimore Pen Mar Ticket *"will be honored for passage only for the person as described on such ticket."* It has been frequently held that as between a passenger and the conductor of a train the ticket is conclusive evidence of the passenger's right to travel. *West. Md. R. R.* v. *Stocksdale*, 83 Md. 245; *McClure* v. *P., W. & B.*, 34 Md. 532; *Bradshaw* v. *South Boston Ry. Co.*, 135 Mass. 407; *Shelton* v. *Lake Shore, etc.*, 29 Ohio St. 214; *C. B. and Q. R. R.* v. *Griffin*, 68 Ill. 499; *Gorton* v. *Milwaukee, etc., Co.*, 54 Wis. 234; *Frederick* v. *M. O. & H. R. R.*, 37 Mich. 342; *Mackey* v. *Ohio River R. R.*, 34 W. Va. 65; *Percy* v. *Street Ry. Co.*, 58 Mo. App. 75; *Pulin* v. *Canadian Pac. R. R.*, 52 Fed. 199; *Brown* v. *Rapid Ry. Co.*, 90 N. W. Rep. 290; *Downs* v. *N. Y., N. H. & H. R. R.*, 36 Conn. 289; *Kiley* v. *Chicago Ry. Co.*, 189 Ill. 386; *VanDusen* v. *R. R. Co.*, 97 Mich. 439; *Baggett* v. *R. R. Co.*, 3 D. C. App. 522.

In the present case the terms of the ticket distinctly said that in order to entitle Mrs. Schaun to a return trip from Pen Mar to Baltimore she must correspond with the description as punched on the ticket.   Consequently, when she presented the exchange ticket offered in evidence in this case to Conductor Hoover she was tendering a ticket that was *bad* on its face.

*William Colton*, for the appellee.

The plaintiff's prayers, announce principles of law perfectly well understood and approved in the following cases, among others, in Maryland.   *P., W. & B. R. R. Co.* v. *Rice*, 64 Md. 63; *Northern Central Ry. Co.* v. *O'Connor*, 76 Md. 219; *Baltimore and Ohio R. R. Co.* v. *Blocher*, 27 Md. 277.   And in the following cases, among others, elsewhere: *English* v. *Delaware and Hudson Canal Co.*, 66 N. Y. 454; *Cherry* v. *Kansas City, etc., R. R. Co.*, 52 Mo. App. 502; *McMaster* v. *New York Life Ins. Co.*, 183 U. S. 39; *Hufford* v. *Gd. Rapids R. R.*, 64 Mich. 631; *Kansas City R. R.* v. *Riley*, 9 South. Rep. 443; *Lawshe & Tacoma R. R.*, 70 Pac. Rep. 118; *Sloan* v. *Railway Co.*, 111 Cal. 668; s. c., 32 L. R. A. 193; *O'Rourke* v. *Railway Co.*, 103 Tenn. 124; s. c., 46 L. R. A. 614; *Muckle* v. *R. R. Co.*, 79 Hun. 32; *R. R. Co.* v. *Rothen, Tex. Writ Appeal*, 21 S. W. 951; *R. R. Co.* v. *Copeland, Tex. Writ Appeal*, 42 S. W. 239; *Head* v. *R. R. Co.*, 79 Ga. 358, 364; *Palmer* v. *R. R. Co.*, 3 S. C. 380; *Chicago R. R.* v. *Graham*, 29 N. E. Rep. 70; *Louisville R. R. Co.* v. *Wolf*, 27 N. E. Rep. 606.

There is nothing in the record to show that the plaintiff was aware of this mistake of defendant's conductor, and she acted precisely as any person would act under like circumstances who was not aware of appellant's mistake.   She put the ticket in her reticule, as she had often done before; for when there is no occasion to believe a mistake has been committed, why should an eldery person be at the trouble of adjusting her eyeglasses to examine a ticket to ascertain and determine its correctness *vel non*, when there was nothing in the world to lead her to believe there was any occasion to do so?   She had

never had any difficulty before, and had ridden with this same conductor frequently, upon the same kind of ticket given her in the same way, and, therefore, it was a great surprise and shock to her when she was told by this same conductor that *his* ticket, given her that morning in exchange for the one conceded by the defendant to be a good round-trip ticket, was worthless. And to contend that his mistake, made in the hurry of the morning trip, where several hundred tickets were being punched for distribution among his many passengers, should be visited upon an inoffensive and unoffending passenger and that she should, therefore, be ejected from the train and humiliated as she was, is not only unreasonable, but unprecedented.

In *Stocksdale's case*, 83 Md. 245, some affirmative act was to be done by the plaintiff to make good his ticket, to wit, to have it stamped by the station agent, and *he knew* this was necessary to be done, and although it was *not done*, he insisted upon riding upon that ticket. In the case at bar, there was no affirmative act to be done by the plaintiff to make good the ticket given her by the defendant's conductor ; *all she had to do was to give back to the same conductor the same ticket he had given her in the morning in exchange for another ticket*, the validity of which is not and cannot be questioned.

It is astonishing to note the great change of conviction upon the law in question that has taken place in some of the most enlightened tribunals in the several States. And perhaps the most pronounced illustration of this is to be found in the case of *Hufford* v. *Grand Rapids Railway Co.*. first reported in 53 Mich. 118, and afterwards reported in 64 Mich. 631. It is the case reported in 53 Mich. which is cited in *P., W. & B. R. R.* v. *Rice*, 64 Md. 66, and in *Frederick* v. *R. R.*, 37 Mich. 342; *Yorton* v. *R. R.*, 54 Mich. 234; *Bradshaw* v. *R. R.*, 135 Mass. 407.

A very late decision upon the subject in controversy is *Lawshe* v. *Tacoma Railway Co.* (Supreme Ct. of Washington, Sept. 15, 1902), 70 Pac. Rep. 118. The reasoning in that case is apposite and the authorities relied on strong and re-

cent, all showing the great and radical departure from the earlier decisions. See also *Swan* v. *Ry. Co.*, 111 Cal. 668; 32 L. R. A. 193; *Muckle* v. *Rochester Ry. Co.*, 79 Hun. 32; *O'Rourke* v. *Ry. Co.*, 103 Tenn. 124; 46 L. R. A. 614.

In *Cherry* v. *Kansas City R. R.*, 52 Mo. App. 499, and *English* v. *Del. & Hud. R. R.*, 66 N. Y. 454, the *same conductor* dealt with the *same passenger* in respect of the *same matter* complained of as in the pending case.

FOWLER, J., delivered the opinion of the Court.

This is an action to recover damages by reason of the plaintiff's alleged unlawful ejection from one of the cars of the defendant railroad company.

The plaintiff, Mrs. Schaun, resides in Baltimore City, but spends the summer at Pen Mar on Western Maryland railroad, and it appears from the testimony that she frequently uses the defendant's road in travelling between these points.

On the 18th July, 1901, she purchased at Hillen Station, Baltimore, a Pen Mar excursion ticket. These tickets were issued by the defendant company at a greatly reduced price for use on the Pen Mar excursion train No. 13, and on that train only on the date stamped on the ticket. There were other conditions and among them that the excursion ticket must be presented to conductor on west-bound trip, who was required to issue in exchange a return ticket, Pen Mar to Baltimore, good only on excursion train No. 24, of date stamped on said return ticket and cancelled by conductor on margin thereof. This return ticket was not to be furnished by conductor unless he had personal knowledge that the individual by whom it was to be used was actually on west-bound excursion train on date stamped on said excursion ticket. It was further conditioned that this exchange ticket issued by the conductor, in exchange for excursion ticket from Baltimore to Pen Mar would be honored for passage only for the person *as described* on such exchange ticket. On the exchange ticket itself is printed the following: "Description of Holder of Balt. Ticket No. 12108, who alone is entitled to use

this return ticket from Pen Mar to Walbrook as indicated by punch mark." Following this are 12 small divisions on the ticket thus arranged:

| Man   | Dark  | Short  | Elderly     |
|-------|-------|--------|-------------|
| Woman | Light | Stout  | Middle Age  |
| Child | Tall  | Slight | Young       |

In order to prevent the transfer of these tickets, the railroad company required the conductor to punch a general description of the passenger to whom such exchange ticket was given.

It appears according to her testimony that on the day named, Mrs. Schaun, the plaintiff, after purchasing her excursion ticket at Hillen Station got on the proper train gave up her Baltimore Pen Mar excursion ticket and received an exchange ticket which she said, believing it was correct, she put in her pocket without any inspection or examination. It is apparent that the slightest inspection of the ticket would have informed the plaintiff that she was not the person described as the holder thereof. Naturally she was much surprised, therefore, when on returning the same evening on the proper train the same conductor who gave her the exchange ticket refused to accept it, because it did not describe her personal appearance. The ticket called for a woman, light, slight and young, and the plaintiff was dark, stout and middle aged. She refused to pay the fare of $2.20 from Pen Mar to Baltimore and the conductor put her off at Blue Ridge Summit without using any undue force or violence. It also appears from the testimony of the witness, Hoover, that he was the conductor in charge of the excursion train the morning of July 18th—that he had known the plaintiff for three years and that he did not see her on the train that morning; that her daughter was, and that she was travelling on a Pen Mar excursion ticket. He also testified that by the rules of the company he was authorized to call on the brakeman to assist him in collecting and punching the tickets; that he had requested him to punch tickets that morn-

ing owing to the number of people 'that were on the train and the fact that he (the conductor), was liable at any moment to . be called away to look out for signals or orders, and that he did not examine the ticket after he gave it to the brakeman to see whether it was punched correctly.

The witness, Gelbach, the brakeman, testified that he assisted the conductor, punched the tickets and handed them to the passengers; that he knew the plaintiff; that she frequently rode on defendants trains ; he did not see her, but did see one of her daughters on the train on the morning of the 18th July. The witness, Miss Schaun, the daughter of the plaintiff who was referred to by the brakeman, testified she was not on the train at the time mentioned.

While the foregoing is a brief statement of only a part of the facts, sufficient has been said to present the one question the solution of which in our opinion, will dispose of this case. That question is presented by the defendant's first prayer by which the Court was asked to instruct the jury that there was no legally sufficient evidence to prove that the plaintiff was unlawfully ejected from the defendants cars.

Starting with the concession that the plaintiff was in fact upon the defendant's cars, for the jury evidently so found from the evidence under the Court's instruction given in lieu of plaintiff's second prayer, and also conceding, if, as the jury found, she was then on the train that the misdescription placed upon the exchange ticket was through the fault or negligence of the conductor or brakeman .or both, we are to decide whether, *in this action*, the plaintiff can recover.

Since the decision of *Stocksdale's case,* 83 Md. 245, it is settled law in this State, and the proposition is supported by the weight of authority, "that when a passenger receives a defective ticket from an agent of the company by reason of the mistake or negligence of the agent, the conductor may refuse to accept such ticket and is authorized to compel the passenger to leave the train if payment of the fare is refused." "In these cases" we said in the case just cited "the passenger should pay the fare demanded and seek his remedy by an action for the breach

of the contract, and not by an action of tort for the ejection."
In the case of *Hufford* v. *Grand Rapids*, 53 Mich. 118, the ab-
solute necessity of such a rule is recognized by JUDGE COOLEY
and he says that not only railroad companies, but the public
is especially interested in having the rules whereby conductors
are to govern their action, certain and definite, so that they
may be enforced without confusion and without stoppage of
trains, "and, if the enforcement causes temporary inconvenience
to a passenger who, by accident or mistake is without proper
evidence of his right to a passage, though he has paid for it,
it is better that he should submit to temporary inconvenience
than that the business of the road be interrupted to the general
annoyance of all who are upon the train."

It is said by the learned counsel for the plaintiff that there
has been an astonishing change in the views of the Supreme
Courts of Missouri and Kansas upon this question, but there
has been no such change in the views of this Court since we
expressed our opinion in *Stocksdale's case*, *supra*, and so long as
the law laid down in that case remains unquestioned an action
of tort for damages will not lie on the case made by this plain-
tiff and she must be left, as is said, in *Bradshaw* v. *South Bos-
ton Railway Co.*, 135 Mass. 407 to her remedy, if any she
has in an action against the defendant for a breach of contract.

But it is said the fact that the conductor who gave the plain-
tiff the defective ticket is the same one who on the return trip
refused to accept it distinguishes this case from the Stocksdale
and other cases of that kind. We cannot, however, under-
stand what effect *this fact* can have unless the jury are to infer
therefrom that when the conductor refused to accept the plain-
tiff's exchange return ticket he knew she was in fact on the
train in the morning and knew also that he had erroneously
punched the ticket. Now whatever *the fact* may be he swears
he did not see the plaintiff that morning. The brakeman tes-
tifies that he did not see her and both of them swear they saw
her daughter. But let us assume both he and the brakeman
are mistaken. They may have forgotten. It is not reason-
able to require that he should remember the fact that the plain-

tiff was on the train—any more than that he should be held to remember many others he was accustomed to see there day after day.    The very fact that she and many others were constant travellers on his train would render it difficult for him to say with certainty whether she or they were on the train on any particular day.    We do not think, therefore, it can be inferred merely from the fact that she was on the train or even that he saw her there that morning, that he remembered and knew the fact in the evening when she presented the ticket which upon its face described a person of entirely different personal appearance from the plaintiff.    There is no other proof in the case that at the time he refused to accept the ticket on the evening train he knew she was on the train in the morning and that she was the person to whom he had given the rejected ticket:

If there was any legally sufficient evidence in the case of such knowledge on the conductor's part, then his conduct would have been entirely unjustifiable, but in the absence of proof, we cannot infer, nor allow the jury to infer, such knowledge on the part of its agent as would render the defendant responsible in *this form of action.*

We are of opinion, therefore, that the judgment appealed from must be reversed, but without prejudice to the right of the plaintiff to enforce her rights, if any she has, in another form of action.

*Reversed, without prejudice, with costs.*

(Decided July 1st, 1903.)