## ALLEN J. ARNOLD *vs.* RHODE ISLAND COMPANY.

### JANUARY 9, 1907.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1)    *Common Carriers.    Transfers.    Expulsion of Passenger.    Actions.*

If a passenger upon a street car is entitled to his transportation and presents to the conductor the evidence of his right which the company has established for that purpose, he may lawfully resist expulsion and recover in a suitable action against the company for damage caused by the violence of its servant.

(2)    *Transfers.    Statutes.    Rules of the Carrier.*

If a transfer offered by a passenger upon a street car was good for passage upon the car where he offered it, according to the rule and practice of the carrier, it is immaterial whether the statute regulating transfers had compelled the carrier to enact such a rule and establish such a practice. The obligation of the carrier to the public had been established by its own course of dealing, and so had become binding upon it by its voluntary act, whether it exceeded the requirement of the statute or not.

(3)    *Verdicts.    Excessive Damages.*

Where transfers, good for passage upon the car where they were offered, had been refused on previous occasions and fare demanded which had been subsequently refunded by the carrier, a verdict for $175 for the expulsion of the passenger by the servants of carrier, on a third occasion under similar circumstances is not excessive.

TRESPASS ON THE CASE.    Heard on exceptions of defendant to denial of defendant's motion for new trial in Superior Court and to rulings of the court, and exceptions overruled.

DOUGLAS, C. J.    This is an action of trespass on the case, brought by a passenger upon one of the street cars which the defendant operated in the city of Providence, to recover damages for being forcibly ejected from the car by the defendant's servant.    The plaintiff presented a transfer which he claimed to be good, but which the conductor refused to accept for his fare, demanding a further cash payment which the plaintiff refused to pay.    The plaintiff recovered a verdict of $175 in the Superior Court, and the presiding justice refused the defendant's motion for a new trial based on the ground that the verdict was contrary to the evidence and that the amount was excessive.

The exceptions allege error in the denial of the defendant's motion for a new trial and in certain rulings of the court at the trial, and in the charge.

The first question raised by the exceptions is whether the form of action is correctly chosen, the defendant contending that, if the transfer were valid, the plaintiff should have paid the fare demanded and resorted to an action of assumpsit to recover it back.

The cases which are cited by counsel, however, do not support this proposition to its full extent.

Thus it is held in *Norton* v. *Consolidated Ry. Co.*, 63 Atl. Rep. 1087 (Conn.), that a passenger who is aboard a street car without a proper transfer ticket, due to the negligence of the conductor of the car from which he was transferred, is entitled to sue for breach of contract for failure to furnish a proper ticket and recover the loss necessarily following therefrom, but he cannot refuse to pay his fare, and to forcibly resist being expelled from the car; and where he does so, and no more force is used than necessary to remove him from the car, he can only recover nominal damages.    The case is supported by abundant citations from many jurisdictions, but it does not decide the issue presented to us.

So in *Bradshaw* v. *South Boston R. Co.*, 135 Mass. 407; *Dixon* v. *N. E. R. Co.*, 179 Mass. 242; *Kiley* v. *Chicago City Ry. Co.*, 189 Ill. 384; *Brown* v. *Rapid Ry. Co.*, 134 Mich. 591, the passenger did not present a ticket which entitled him to passage in the car in which he was travelling, as the plaintiff in the case at bar claims that he did.

In *Monnier* v. *N. Y. C. & H. R. R. Co.*, 175 N. Y. 281, and in *Crowley* v. *Fitchburg & L. St. Ry. Co.*, 185 Mass. 279, the passenger had no ticket at all.

In *Western Maryland R. Co.* v. *Schaun*, 97 Md. 563, the passenger had an invalid ticket, and in *McGhee & Fink, Rec'rs, etc.*, v. *Reynolds*, 117 Ala. 413, the ticket offered was void on its face.

In *Hufford* v. *Grand Rapids & Indiana Ry. Co.*, 53 Mich. 118, in the opinion, by Chief Justice Cooley, it is said: "If the conductor, who was manager of the train, informed him that for any reason the ticket was one he could not receive, a contest with him over it must generally be very profitless, and therefore unadvisable. But we are all of the opinion that if the plaintiff's ticket was apparently good, he had a right to refuse to leave the car."

(1)    We have no doubt that this is generally understood to be the law. It would be as reasonable to require the company to carry a man who refuses to pay his fare and sue him for it afterwards as it would be to require a man who presents the proper evidence that he has paid his fare to pay it again and resort to his action of contract to recover it. If the passenger is entitled to his transportation and presents to the conductor the evidence of his right which the company has established for that purpose, he may lawfully resist expulsion and recover in a suitable action against the company for damage caused by the violence of its servant.

In *Atchison, etc., R. R. Co.* v. *Dickerson*, 4 Kas. Appeals, 345, the court treat a similar argument to the one here presented, as follows (p. 354): "It is also contended that Dickerson could have escaped the humiliation and indignity by paying the excess, and then his measure of damages would be 10 cents; that he had no right to aggravate the damages by not

complying with the demand of the conductor. We are not partial to a rule that would require a person to submit to an extortion for the purpose of relieving the extortioner from the natural consequences of his acts."

In *Jeffersonville R. Co.* v. *Rogers*, 28 Ind. 1, 6, the court say: "It is argued that the utmost damages recoverable was the difference between the two rates of fare, fifteen cents, by paying which all other inconvenience and damage would have been avoided. But no man is bound to submit to even a trifling extortion. If he had a right to be carried for the sum tendered to the conductor, then the expulsion was purely wrongful, and for the consequences thereof the defendant was liable. The plaintiff was under no obligation to purchase even for a trifle the right which was already his own. This principle is elementary."

In *N. Y. Lake Erie, &c., R. Co.* v. *Winter's Admr.*, 143 U. S. 60, p. 73, it is held that where a party is rightfully on a car or train as a passenger he has a right to refuse to be ejected from it and to make sufficient resistance to being put off to denote that he was being removed by compulsion and against his will; and the fact that under such circumstances he was put off the car or train is of itself a good cause of action against the company, irrespective of any physical injury which he may have received. See also *Murdock* v. *Boston & Albany R. Co.*, 137 Mass. 293, and *New Jersey Steamboat Co.* v. *Brockett*, 121 U. S. 637.

The next contention is that the statute requiring the defendant corporation to give transfers between its lines does not in terms require a transfer, such as the plaintiff had, to be accepted on the car on which he offered it, and that, therefore, a rule of the company making such a transfer valid is of no effect. The insufficiency of this argument is apparent. The statute, while requiring certain accommodations from the company, did not forbid it to grant more ample ones to the public. If the transfer offered by the plaintiff was good for passage upon the car where he offered it, according to the rule and practice of the defendant, it is immaterial, as ruled by the

court below, whether the statute had compelled it to enact such a rule and establish such a practice. Its obligation to the public had been established by its own course of dealing, and so had become binding upon it by its voluntary act, whether it exceeded the requirement of the statute or not.

The statute imposed upon the defendant the duty of giving transfers. The plaintiff had paid for passage along Brook street to Waterman, and thence along Waterman by either line passing that corner going east. The company had adopted a certain voucher to be presented to its conductors by a passenger, like the plaintiff, who claimed the right to ride on the Butler avenue line by transfer from another car. The company was therefore bound to see that its conductor accepted and honored the voucher which it had provided for that purpose. The language or marks on the transfer card were nothing to the plaintiff so long as it was the card which the defendant's rule made good for him to show on the car to which he transferred.

In order to understand the evidence in the case it is necessary to know that Waterman and Angell streets between Prospect street and Wayland avenue run east and west, substantially parallel to each other, Angell street lying to the north of Waterman; and that Brook street runs north and south, crossing Angell street at right angles. At the time to which the case relates the Dyer avenue line, after crossing Brook street, ran easterly on Waterman street to Wayland avenue, thence northerly to Angell street, thence easterly to Butler avenue, thence northerly to Blackstone boulevard and along Blackstone boulevard to the entrance of Swan Point Cemetery. The Elmgrove avenue line ran over the same route to Angell street, thence westerly on Angell street to Elmgrove avenue and thence northerly on Elmgrove avenue to its termination.

About half past six, P. M., June 14, 1905, the plaintiff, who wished to go from his place of business on Brook street to his home on Elmgrove avenue, boarded a Brook street car going north on Brook street. He paid his fare and asked for and received a transfer to the Elmgrove avenue line. When

he reached the corner of Waterman street and Brook, the Elmgrove avenue car had passed by and he boarded the next car going east on Waterman street, which was a Dyer avenue and Swan Point car. When the plaintiff's fare was demanded by the conductor he tendered the said transfer, which the conductor refused to accept, upon the ground that it was not good upon that line. After some conversation, in which the plaintiff informed the conductor that he had been assured by Mr. Potter, the general superintendent of transportation, that such transfers were good on that line and in which he requested the conductor to take from his pocket the printed regulations of the company, which directed him to receive such transfers upon that line, the conductor persisted in refusing the transfer, insisted that the plaintiff must pay his fare, or he would put him off the car; and, thereupon, the plaintiff refusing to pay his fare, the conductor stopped the car and with the assistance of the motorman removed the plaintiff from the car, using such force as was necessary.

There was no contradiction of this evidence, the defendant calling no witnesses.

The plaintiff accepted the burden of showing that the transfer which he offered was valid. To prove this he introduced a rule of the company for the guidance of its conductors, as follows: "Dyer Avenue and Butler Avenue Line. On east bound trips conductors will honor transfers punched for Butler Ave., Elmgrove Ave., or Red Bridge, E., in accordance with the general rules and time limit, telling the passengers how far you go on Angell Street."

It appeared also in evidence that some time previous to the occurrences to which this action relates a change had been made in the direction in which these lines of cars were run on Waterman and Angell streets. When this rule was printed, it was the custom for the Dyer avenue, Elmgrove avenue, and Red Bridge lines of cars to run easterly on Angell street and to return westerly on Waterman street, instead of running easterly on Waterman street and returning westerly on Angell street as they did at the time in question. It was seriously urged that this rule could have no application to the state of

affairs existing after the change of direction, although the testimony was overwhelming that the rule still continued in force and operation, simply making the transfer point from Brook street the corner of Waterman street instead of the corner of Angell street and reversing the change to passengers changing to Brook street. The new point of intersection became, of necessity, the point of transfer, and the rule applied as before.

In further support of the validity of his transfer the plaintiff testified that on two occasions previous to the fourteenth day of June, 1905, the last time some six or eight weeks before that date, the Dyer avenue conductor had refused to accept from the plaintiff a transfer from the Brook street line to the Elmgrove avenue line; that on each occasion the plaintiff had paid his fare and reported the circumstances to Albert E. Potter, who was then the superintendent of transportation of the defendant company and who had charge of all conductors and motormen and issued all instructions and rules of government for the lines of the company; that on these occasions his fare was refunded and he was told by Mr. Potter that under the rules of the company an Elmgrove avenue transfer from Brook street was good on a Dyer avenue car. This evidence was corroborated by Mr. Potter, who was called by the plaintiff, and also by Roscoe E. Anderson, chief clerk of the transportation department of the defendant, who also assented to the existence and application of the general rule quoted above. The objections which are made and urged to the admission of evidence during the trial, and the objection to the charge, relate to this testimony. They are not strenuously relied upon before us, and an exhaustive examination of the specific objections does not show us that any substantial error was committed in the admission of the questions to which they relate, or in the comments thereon in the charge.

(3) The final ground of exception is that the damages assessed were excessive. Considering all the facts of the case, we do not think so. The plaintiff had submitted to the impositions practiced upon him by the servants of the defendant until forbearance had ceased to be a virtue. In each preceding

case he had been assured by the managing officers of the road that he was right in his demands and that the rule which he was informed was in operation should be observed.   Nothing less ·than substantial damages would seem likely to compel the company to see that its regulations should be obeyed by its servants.   The plaintiff's counsel has cited a number of cases in which larger verdicts have been sustained in no more aggravated cases.   Among them are *Finch* v. *No. Pac. R. Co.,* 47 Minn. 36; *Chicago &c., R. Co.* v. *Holdridge,* 118 Ind. 281; *Hardenbergh* v. *St. Paul &c. Ry. Co.,* 41 Minn. 200; *Lake Shore &c. R. Co.,* v. *Teed,* 2 Ohio Dec. 662.

Our conclusion, upon the whole case, is that the exceptions must be overruled and the cause remanded to the Superior Court for judgment on the verdict; and it is so ordered.

*William J. Brown,* for plaintiff.

*Henry W. Hayes, Frank T. Easton, Lefferts S. Hoffman,* and *Alonzo R. Williams,* for defendant.