DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

JUNE TERM, 1893.

---

THE PENNSYLVANIA RAILROAD COMPANY, PLAINTIFF IN
ERROR, v. HOWARD PARRY, DEFENDANT IN ERROR.

When a person, who purchases a railway ticket to a certain place, takes
his seat in a particular train that goes to his destination, he cannot,
without permission of the railway company, while the train is reason-
ably pursuing the duty of the carrier, leave it and take another train
and complete his journey under the same contract. The contract is
entire, and neither he nor the company can be required to perform it
in fragments.

On error to the Burlington County Circuit Court.

The plaintiff below, Howard Parry, on the 22d of Decem-
ber, 1890, purchased an excursion ticket from Riverton, where
he lived, to Mount Holly, both places being in Burlington
county. Riverton is on the main line of the Pennsylvania
Railroad Company between Trenton and Camden, and Mount
Holly is upon a branch line, called the " Burlington Branch."
The ticket purchased by Parry indicated that his route was

551

to be " via Burlington Branch," and that the ticket was " not good to stop off *en route.*" The regulations of the Pennsylvania Railroad Company required that passengers holding such tickets, in going from Riverton to Mount Holly and returning, should change cars at its Broad street station, in the city of Burlington, into which station the trains, both of the branch and the main lines of its railroad, ran.

Upon returning from Mount Holly, in the afternoon of the day named, Parry took a train that left Mount Holly at thirty-eight minutes after four o'clock, and should, according to the company's regulations, connect at the Broad street station with a train which would leave Trenton at twenty minutes after five o'clock. That connection required passengers destined for Riverton, to wait at the Broad street station, a half hour or more, for the arrival of the train from Trenton. On the day in question, the train which Parry took at Mount Holly, reached the end of the branch line, at the city of Burlington, and came to a stop upon the Y track, which connected with the main line, about half a mile from the Broad street station, and there waited, to allow a belated train, upon the main line, to pass before it into the Broad street depot. That train was a local accommodation, scheduled to stop at Riverton, but was not one of the connecting trains with Mount Holly. With a view to saving the half hour's delay at the Broad street station, in waiting for the proper connecting train, Parry and a friend got off the train from Mount Holly, while it stood on the Y track, and, walking the half mile to the Broad street station, reached it in time to catch the belated train, which would stop at Riverton. Upon that train Parry presented the return half of his excursion ticket, and was informed that it was good only on trains which connected with the Burlington branch railroad at the Broad street station, according to the regulations of the company, and that, as the train he was on did not make such connection, the ticket was not good upon it. Parry refused to pay his fare and was put off the train at a way station, before Riverton was reached, without unnecessary force or indignity.

Upon the appearance of the above-stated facts, in the case made by the plaintiff below, the defendant moved for a non-suit, and, upon the denial of that motion, error is, among other things, now assigned.

For the plaintiff in error, *Samuel H. Grey.*

For the defendant in error, *Samuel K. Robbins* and *John W. Wescott.*

The opinion of the court was delivered by

THE CHANCELLOR. The motion to nonsuit presented to the court below this question, whether the contract between Mr. Parry and the railroad company permitted Mr. Parry to quit the branch road train before it reached its destination, and, proceeding in advance of it, continue his journey in a train with which it did not connect and was made available to him only by accidental delay.

It is established, by the course of judicial decision, that when a person, who purchases a railway ticket to a certain place, takes his seat in a particular train that goes to his destination, he cannot, without permission of the railway company, while the train is reasonably pursuing the duty of the carrier, leave it and take another train and complete his journey under the same contract. The reason is that his contract is entire, and neither he nor the company can be required to perform it in fragments. *State* v. *Overton,* 4 *Zab.* 435; *Petrie* v. *Pennsylvania Railroad Co.,* 13 *Vroom* 449; *Cheney* v. *The Boston and Maine Railroad Co.,* 11 *Metc.* 121; *Dietrich* v. *Pennsylvania Railroad Co.,* 71 *Pa. St.* 432; *The Oil Creek and Allegheny River Railway Co.* v. *Clark,* 72 *Id.* 231; *Vankirk* v. *Pennsylvania Railroad Co.,* 76 *Id.* 73; *Hamilton* v. *New York Central Railroad Co.,* 51 *N. Y.* 100; *Wyman* v. *Northern Pacific Railroad Co.,* 34 *Minn.* 210; *McClure* v. *Philadelphia, Wilmington and Baltimore Railroad Co.,* 34 *Md.* 532; *Stone* v. *Chicago and Northwestern Railway Co.,* 47 *Iowa* 82; *Churchill* v. *Chicago and Alton Railroad Co.,* 67 *Ill.* 390;

*Cleveland, Columbus and Cincinnati Railroad Co.* v. *Bartram,* 11 *Ohio St.* 457 ; *Hatten* v. *Railroad Co.,* 39 *Id.* 375 ; *Wilsey* v. *Louisville and Nashville Railroad Co.,* 83 *Ky.* 511.

It is not necessary that the contract of carriage should be fully set out in the passenger's ticket.   The ticket is a mere token that the fare has been paid, and that the passenger has the right to be carried to the destination it indicates, according to the reasonable regulations of the railway company.   Such regulations, at least so far as they are known to the passenger, enter into the contract of passage, and it is the duty of the passenger to conform to them.

The proofs of the plaintiff below very clearly exhibited that Mr. Parry was familiar with the regulations under which the defendant company was accustomed to transport passengers between Riverton and Mount Holly, upon such tickets as the one he purchased.   He admits that he knew that the local accommodation train was apt to be belated, and that the train upon the branch road did not connect with it, and hence that the latter train would not continue to the Broad street station in Burlington until the former had passed, and that it was possible occasionally to catch it, by quitting the branch road train while it was waiting upon the Y and walking a half mile to the Broad street depot.   Indeed, it was his accurate knowledge of the regulations of the company, and the delay they occasioned, that prompted him to disregard them when he saw an opportunity to expedite his transit.

He states that he could have purchased an excursion ticket from Riverton to Burlington and back, and another from Burlington to Mount Holly and return, for the same price that he paid for the single excursion ticket from Riverton to Mount Holly and return, and in that way have secured the undoubted right to return by the local accommodation if he could have caught it.   But he did not purchase the two excursion tickets and make his contract in that way.   He chose rather to buy the single ticket, which expressly provided that he should be transported between the terminal points of his journey " via Burlington Branch," and subjected him to the

regulations that he should be carried to the Broad street station and there change to the cars of a connecting train.

Under authority of the rule referred to, even in absence of the express notice upon his ticket that he should not "stop off *en route*" after he had once started in a train, it may be questionable whether it would not have been an abandonment of his contract if he had left the train, while it was duly performing its duty, at any other point than that which the regulations designated for that purpose. The notice upon the ticket simply served to call attention to that rule. But in deciding this case it is not necessary to determine that question. The additional fact that, with the express notice which the ticket gave before him, he quit the branch train with the deliberate intention of not again taking either it or its connecting train, appears, and in light of such fact his non-conformity to the regulations which entered into his contract, and consequent infraction of that contract and abandonment of his rights thereunder, become too conspicuous to admit of doubt.

There was nothing in the evidence to indicate that the regulations of the defendant company were not reasonable, and it is admitted that the train abandoned was pursuing its way as those regulations required.

Under these conditions the conductor was justified in demanding a new fare, and, upon the refusal of Mr. Parry to pay it, to remove him from the train in the manner that was adopted. *State* v. *Overton, supra.*

It is our conclusion that the plaintiff below should have been nonsuited, and hence that the judgment now reviewed must be reversed.

MAGIE, J. (dissenting). Parry held a return ticket, which expressed the contract of the railroad company to carry him from Mount Holly to Riverton, "via Burlington Branch." There was no condition in the contract that he should take a continuous train, and there was no such train. Nor was there in it any condition that he should take a connecting

train, and, strictly speaking, there was no connecting train with that on which he rode from Mount Holly to Burlington. Passengers by that train were obliged to wait in Burlington for a considerable time before, in ordinary course, a train left for Riverton.

The only condition of the contract affecting Parry was that forbidding him to " *stop off en route.*"

Had the train which brought Parry from Mount Holly moved on to the station in Burlington, he would have been obliged to alight, and, in the absence of stipulations to the contrary, could take the next train on the main line to Riverton, even though that train was a belated train not usually running at that time.

But the train which brought Parry from Mount Holly had, in fact, passed over the branch road and arrived at the main line at the junction. When Parry alighted there he, perhaps, forfeited his right to be carried to the station, but, by such alighting and walking the short distance to the station, he did not forfeit his right to be carried from there to Riverton, unless his act was a stopping off *en route.*

Whether Parry's conduct violated that condition depended on whether he acted with intent to break the continuity of his journey. That was a question for the jury, and it was properly left to them.

Finding no error, I shall vote to affirm.

ABBETT, J., concurs.

*For affirmance*—ABBETT, MAGIE, BROWN, KRUEGER.    4.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, LIPPINCOTT, REED, VAN SYCKEL, BOGERT, CLEMENT, SMITH.    10.