Charles H. Monnier, Respondent, *v.* The New York Central and Hudson River Railroad Company, Appellant.

1. Railroads — Forcible Removal from Train of Passenger without Ticket who Refuses to Pay Additional Fare — Action Will Not Lie for Assault and Battery. A passenger on a railroad train must subordinate his conduct to all rules of the company that are reasonable and valid. It is the duty of the conductor to execute and enforce them; if there is some fact or omission behind the rules not apparent upon the face of the transaction, the passenger must resort to some other remedy for his grievance besides the use of force against the conductor, and if, under such circumstances, he invites a personal collision with him he puts himself in the wrong, and cannot sue the company or the conductor for damages for assault and battery.

2. Inability of Passenger to Procure Ticket no Justification for Forcible Resistance — Duty of Passenger. The fact that a railroad passenger, by reason of the absence of the ticket agent, is unable to procure a ticket before entering the train, is no justification for his forcible resistance to an ejection therefrom when, having refused to pay the additional fare required of passengers without tickets by a rule of the company

made under express statutory authority, the conductor without undue force ejects him; and neither the company nor the conductor is liable for damages in an action for an assault and battery brought by the passenger; under such circumstances it is his duty to pay the additional fare or submit to an ejection, and then resort to his remedy for the negligence or mistake of the ticket agent.

*Monnier* v. *N. Y. C. & H. R. R. R. Co.*, 70 App. Div. 405, reversed.

(Argued May 7, 1903; decided June 9, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 10, 1902, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Thomas D. Watkins* for appellant. It was error for the court to deny the defendant's motion for nonsuit at the close of all of the evidence in the case. (*Magee* v. *O. R. & N. Co.*, 46 Fed. Rep. 734; *Pouilin* v. *C. P. Ry. Co.*, 52 Fed. Rep. 197; *Harrison* v. *Fink*, 42 Fed. Rep. 787; *Townsend* v. *N. Y. C. & H. R. R. R. Co.*, 56 N. Y. 295; *Wiggins* v. *King*, 91 Hun, 343; *A., T. & S. F. R. Co.* v. *Hogue*, 50 Kan. 40; *Belknap* v. *B. N. R. Co.*, 49 N. H. 358; *C., H. & D. R. Co.* v. *Cole*, 29 Ohio St. 126; *Mosher* v. *St. L., I. M. & S. R. Co.*, 127 U. S. 248; *Frederick* v. *M. R. R. Co.*, 37 Mich. 342.)

*D. F. Searle* for respondent. The plaintiff, having been assaulted and wrongfully ejected by the conductor, had a cause of action against the defendant for the damages thereby sustained by him. (*Muckle* v. *R. Ry. Co.*, 79 Hun, 32; *Jenkins* v. *B. H. Ry. Co.*, 29 App. Div. 8; *Wright* v. *G. F. R. R. Co.*, 24 App. Div. 617; *Franklin* v. *T. A. R. R. Co.*, 52 App. Div. 512; *Stewart* v. *B. & C. R. R. Co.*, 99 N. Y. 558; *Hamilton* v. *T. A. R. R. Co.*, 53 N. Y. 25.) The railroad cannot exact the extra five cents unless the ticket office was open for the sale of tickets at and previous to

the starting of the train. (*Chase* v. *N. Y. C. R. R. Co.*, 26 N. Y. 523; *Nillis* v. *N. Y. C. R. R. Co.*, 30 N. Y. 505.) The plaintiff being rightfully on the train, and tendering the full amount of fare fixed by the legislature as a condition of defendant's existence, he had a right to resist any attempt to wrongfully eject him, and had a right to defend himself against assault. (*English* v. *D. & II. C. Co.*, 66 N. Y. 454; *Hamilton* v. *T. A. R. R. Co.*, 53 N. Y. 25; *Cox* v. *N. Y. C. R. R. Co.*, 11 Hun, 621; *Stewart* v. *B. Ry. Co.*, 90 N. Y. 558; *O'Brien* v. *N. Y. C. R. R. Co.*, 80 N. Y. 236.)

O'BRIEN, J. The plaintiff has recovered damages for an assault and battery committed upon his person by one of the defendant's conductors on the 16th day of November, 1900, when the plaintiff was in one of the defendant's cars as a passenger from Oriskany to Utica. There is little, if any, dispute about the facts. It appears that on the day mentioned the plaintiff went to the defendant's station at Oriskany to take passage upon the local train to Utica. The office for the sale of tickets located at the station was open for an hour before the departure of the train, but from five to ten minutes before the train pulled out the ticket agent was absent from the office, as he was obliged to pass over on the opposite side of the track, a short distance, to look after an express package, and before he returned the train pulled out and the plaintiff entered one of the cars without any ticket. We must assume from the verdict of the jury that the plaintiff boarded the car without a ticket for the reason that the ticket agent was absent from the office from five to ten minutes before the train started, and, therefore, the plaintiff was unable to procure a ticket. Two other passengers entered the train at the same station, but both of them had procured tickets. Soon after leaving the station the conductor passed through for the purpose of taking up the tickets. The two other passengers who entered the train at the same station handed him their tickets, but when he came to the plaintiff he was told that as the office was closed he had no ticket.

The plaintiff then tendered fifteen cents to the conductor as the fare to Utica, but the conductor told him that the fare was nineteen cents when the person had no ticket. The plaintiff replied that the ticket office was not open and he could not get a ticket and that he would pay the price of a ticket, but no more. The conductor again told him that the fare was nineteen cents, and demanded that amount, telling him at the same time that if he did not pay it he must get off at the next station, and the plaintiff's answer was, "I will pay the New York Central Company all the law allows them." . On arriving at the next station the plaintiff, in response to a similar request, refused to pay the nineteen cents, but offered to pay fifteen cents. When the plaintiff refused to pay the sum demanded, the conductor stopped the train at the station and put him off. The plaintiff resisted the conductor, but he was overpowered and finally removed from the car, the conductor using no more force than was necessary. The plaintiff then took a street car to Utica, the fare being ten cents. The conductor inquired of the other passengers who entered the car at Oriskany if they had purchased their tickets at the station that morning and they told him that they had, but at the same time they corroborated the plaintiff's statement that the ticket agent had stepped out of the office and across the track a short time before the train started. The removal of the plaintiff from the car in the manner and under the circumstances stated is the assault and battery of which he complains and for which he recovered the damages. The right of the plaintiff to recover was challenged by defendant's counsel, by a motion at the close of the case and by requests to charge, all of which were denied or refused by the learned trial judge, and exceptions taken.

This case presents the question whether the plaintiff had any right to resist the conductor when he was ordered to leave the train. The right of the conductor to remove a passenger from the car when the latter refuses to obey the reasonable rules and regulations of the company, and the right of the passenger to resist the enforcement of such rules by force,

cannot exist at the same time. When such claims come in
conflict with each other every reasonable man will agree that
there are certain principles so obviously just that when
applied to the facts of the particular case will work a
fair solution of the question in controversy. The rule of the
company that required the conductor to collect nineteen cents
from the passenger who did not purchase a ticket is concededly
a valid and reasonable regulation. It is sanctioned by the
terms of an express statute and the duty of the conductor
was to enforce it and, therefore, it was the duty of the pas-
senger to submit to it. A person who becomes a passenger
in a public conveyance must subordinate his conduct to all
rules that are reasonable and valid. Without such rules the
corporation will not be able to perform the functions for
which it was created. In the present case no one ques-
tions these propositions, but what is asserted in behalf of
the plaintiff is that, behind these reasonable regulations there
was a fact which rendered them inoperative or inapplicable to
him, and that was the fact that the ticket agent was not in his
office when the train started and in consequence of his absence
the plaintiff was unable to procure a ticket. But the conduc-
tor could not know what the fact was in that respect and was
not bound to take the passenger's word for it, nor could he
try and decide the question upon the word of the other pas-
sengers who procured tickets at the same station. The simple
duty of the conductor is to execute and enforce all reasonable
rules and that of the passenger is to obey them. If there is
some fact or omission behind the rules not apparent upon the
face of the transaction the passenger must resort to some
other remedy for his grievance besides the use of force against
the conductor, and if under such circumstances he invites a
personal collision with the officer in charge of the train, result-
ing in his forcible expulsion, he puts himself in the wrong
and cannot sue the company or the officer for assault and bat-
tery. In this case the plaintiff acted upon the principle that
if he could ultimately prove that the ticket office was not open
when the train started and that he could not procure a ticket,

he had the right to refuse to pay the nineteen cents and to resist the conductor by force when he attempted to put him off. It would be difficult to show that such a principle has any support in reason, justice or authority. It is based upon the notion that the plaintiff had the right to be the judge in the controversy and to enforce what he deemed to be his rights with the strong arm, and, if worsted in the struggle, to sue the railroad for assault and battery. That, I think, is not the law. When a railroad company willfully exacts from a passenger more than the legal rate of fare, the latter may sue the company under the statute for the penalty of fifty dollars and the excess of fare, besides the damages that he may sustain in consequence of the wrongful act. But, as in this case, when the conductor demands only what he has the right to demand by the statute and rules of the company, the passenger is not at liberty to assert and maintain by force some right that he may claim which grows out of facts not within the knowledge of the conductor and which may render the rules inoperative or inapplicable. He is bound for the time being to yield to the reasonable practice and requirements of the officer in charge of the train and enforce any right that he may have against the company in some other and more proper way. By paying such a demand his cause of action is just as complete as if he forcibly resisted the demand and suffered himself to be ejected. His ejection in such case will add nothing to his cause of action.

It would be an absurd and intolerable rule of law that would permit passengers upon a railroad to resist the officer in charge whenever a dispute arose in regard to some trivial matter wherein the passenger had a real or fancied grievance. When the plaintiff was told that he must, under the rules, pay the nineteen cents or leave the car, it was his duty either to pay the extra four cents or leave and resort to the remedy which the law gave for the redress of his grievance. The conductor could not suspend the rule merely because he was told that the passenger could not procure a ticket before the train started, and when notified by the conductor that removal

from the train must follow his refusal to pay he had notice of the rule and the consequence of his disobedience to it. When he waited for the application of force to remove him he did so in his own wrong. He virtually invited all the force necessary to remove him, and, since no more was applied than was necessary to effect the object, he cannot recover either against the conductor or the defendant in an action for assault and battery. (*Townsend* v. *N. Y. C. & H. R. R. R. Co.*, 56 N. Y. 295.)   No case has been cited that sustains the proposition contended for by the learned counsel for the plaintiff, and that is that the plaintiff had the right to resist the conductor by force, on the ground that he was unable to procure a ticket.    There are cases where damages were recovered for ejecting a passenger from the train.   Such was the case of *English* v. *D. & H. Canal Co.* (66 N. Y. 456), where it was found that the conductor used more force than was necessary, and the proof tended to show that the train was in motion at the time, and, therefore, the law of self-preservation justified the passenger in repelling any attempt to eject him which would endanger his life.   The case of *N. Y., L. E. & W. R. R. Co.* v. *Winter* (143 U. S. 60) justifies resistance in a case like this, only so far as may be sufficient to denote that the passenger gets off by compulsion and not voluntarily.

The cases in other jurisdictions are to the effect that in a case like this the passenger must submit to the inconvenience of either paying the fare demanded or ejection, and rely upon his remedy against the company for the negligence or mistake of the ticket agent.   The conductor cannot decide from the statement of the passenger, or his neighbors, what the facts are which may affect the operation of the rules.   This would require more time than the conductor can find in the proper discharge of his duties, and would expose the company to numerous and constant frauds. (*Bradshaw* v. *S. B. R. R. Co.*, 135 Mass. 407 ; *Frederick* v. *M. H. & O. R. R. Co.*, 37 Mich. 342 ; *Shelton* v. *L. S. & M. S. Ry. Co.*, 29 Ohio St. 214 ; *Dietrich* v. *Penn. R. R. Co.*, 71 Pa. St. 432 ; *C., B. & Q. R. R. Co.* v. *Griffin*, 68 Ill. 499 ; *Pouilin*

v. *Can. Pac. Ry. Co.*, 52 Fed. Rep. 197; *Hall* v. *M. & C. R. R. Co.*, 15 Fed. Rep. 57; *Wiggins* v. *King*, 91 Hun, 343.)

The question always is in controversies of this character whether it is the conductor or the passenger that is in the wrong. If in this case it be the conductor, it must be because he should have disregarded the rules of the company upon the faith of the statement of the passenger and his neighbors that the ticket agent was absent from the office. On the other hand, it must be that the passenger, finding that the ticket agent, at a rural station where few tickets are sold, stood at the window ready to hand out tickets for only fifty instead of sixty minutes, was justified in starting a dispute with the conductor which involved only four cents more than he offered to pay, resulting in a personal collision or trial of strength and force and ending in his expulsion from the train. It seems to me that when a passenger defies the authority of the officer in charge, upon such grounds and under such circumstances, he must be held to have deliberately invited and procured the assault of which he complains. In the interests of peace and good order the law imposed upon the passenger the duty of obedience, and hence he should have either paid the four cents or left the car under protest and then resorted to those peaceful remedies which the law provides in cases of wrongful or oppressive acts on the part of the railroad.

The law imposes upon the individual the duty of obedience, under all circumstances, to lawful authority, and if, underlying the authority, there may be a question of fact which renders the exercise of it unlawful, it is not for the party himself to decide that question and resort to violence or forcible resistance. The remedy is to appeal to the regular tribunals for the redress of any wrong or injury that he may have sustained in consequence of his enforced obedience to the regulation which he claims was not, for some reason, applicable to him under the circumstances.

We have, of course, no reference here to cases where personal rights or privileges may be invaded without jurisdiction or warrant of law, but to cases that in some sense are analogous

to that of an officer who is called upon to execute process regular upon its face, though behind the process there may be some fact which would justify the decision that it was absolutely void. In such cases the individual affected must, for the time being, yield to the process and resort to proper proceedings to set it aside or to redress the injury.

For these reasons I think the judgment should be reversed and a new trial granted, costs to abide the event.

Cullen, J. I vote for a reversal of the judgment appealed from. By section 1 of chapter 228, Laws of 1857, it was enacted that the defendant at every station on its road where it maintained a ticket office, should keep the same open for the sale of tickets for at least one hour prior to the departure of each passenger train. By section 2 it was provided that if any person should at any station where a ticket office was established and open, enter the cars without first having purchased a ticket, it should be lawful for the company to demand and receive five cents in addition to the prescribed rate of fare. The plaintiff entered the cars without a ticket at a station where a ticket office was established, but as we must assume, for the jury have so found, on an occasion when the same was not continuously kept open for the period of one hour before the departure of the train. He contends that, therefore, the demand for the extra five cents was excessive and that principle has been held by this court. (*Chase* v. *N. Y. Central R. R. Co.*, 26 N. Y. 523.) Hence, had he paid that sum he could, under chapter 185, Laws of 1857, have recovered it back from the company, together with a penalty of fifty dollars for its exaction. I agree with Judge Bartlett that each party was bound to know and to determine for itself its legal rights, and also that if the plaintiff was within his legal rights he was justified in resisting any attempt to remove him from the cars. The question, as is said by Judge Bartlett, is not one of good taste (though I deny that good taste requires a passenger to submit to an imposition or unlawful exaction),

but of legal right. The question, however, remains whether the conductor was justified in requiring the plaintiff to pay the additional five cents, though as between the plaintiff and the company it was an unlawful exaction. The object of the statute, that passengers should be induced, under the penalty of an additional fare, to purchase tickets before entering the train, was in the interest of the public as well as in that of the company. There was a ticket office established at the station, and, therefore, the case of the plaintiff, *prima facie*, fell within the statutory provisions. The conductor did not know, and ordinarily could not know, whether the ticket office there had been kept open continuously for an hour before the departure of the train. He had a right to act on appearances. If he were obliged either to take the statement of every passenger that the office was for some part of the hour closed, or reject it at his peril, in case the statement should prove to be true, the provision requiring the purchase of tickets in advance of entering in the trains would entirely fail. In determining the lawfulness of the act of the conductor we must consider the common course of business of the country, and it seems to me fairly plain that the rule laid down in the courts below would be unreasonable and inconsistent with the ordinary and proper methods of conducting the transportation of passengers on railroads. If the conductor had attempted to exact as fare a sum in excess of that which by law he was, *prima facie*, entitled to demand, a very different question would be presented. In such a case I would agree with Judge BARTLETT, that the passenger would be justified in resisting an attempt to eject him from the train, and that the good faith or ignorance of the conductor would not relieve the defendant from liability.

BARTLETT, J. (dissenting). The material facts are undisputed. The plaintiff arrived at the depot of defendant at Oriskany on the morning of a certain day at 8 : 50 or 8 : 53 to take the 9 : 01 train for Utica. From the time of plaintiff's arrival until the departure of the train the ticket agent

was absent from his office and no opportunity was afforded plaintiff to purchase a ticket.

The plaintiff took a seat in the train and when the conductor asked for his ticket stated to him the facts accounting for its non-production, being corroborated by two friends. The plaintiff thereupon tendered the regular fare to the point of destination, but the conductor insisted on collecting the five cents extra imposed by the statute as a penalty for failing to purchase a ticket at the station.

The plaintiff refused to pay the penalty and the conductor, against his protest and resistance, and with violence, ejected him from the train at Whitesboro, a station between Oriskany and Utica. The plaintiff thereupon brought this action against the defendant to recover damages for assault and battery.

We have thus presented a not unusual situation, arising between the common carrier and its passenger, involving the single legal question, which party acted within legal right. If plaintiff failed to purchase a ticket before entering the train, opportunity having been afforded him to do so, he was liable to pay the statutory penalty of extra fare and refusing to do so, his ejection from the train was proper. On the other hand, if the defendant, by its act, rendered it impossible for the plaintiff to procure a ticket, his ejection from the train was wrongful and this action lies.

The argument on behalf of the defendant and appellant is, in brief, that the plaintiff should have paid the extra fare-penalty, or left the train when requested to do so by the conductor, relying in either event upon his legal remedy; that the violence and indignity visited upon the plaintiff were of his own seeking and he cannot recover damages therefor.

This is not the law. The plaintiff and defendant were each bound in the emergency to determine the character of his or its legal rights, as it frequently happens that parties drifting into a legal controversy are driven to decide this question at their peril.

Much has been said as to the good taste of plaintiff in

resisting so slight an invasion of his legal rights as was involved in the collection of the extra fare penalty.

The matter of good taste is wholly aside from the questions presented by this appeal; courts do not sit to enforce duties of imperfect obligation.

As to the extent the rights of the person were invaded in this case was a question very properly submitted to the jury and the plaintiff received at their hands a substantial verdict.

We agree with and adopt the prevailing opinion of the learned Appellate Division.

The judgment appealed from should be affirmed, with costs to the plaintiff.

PARKER, Ch. J., HAIGHT, J. (and CULLEN, J., in memorandum), concur with O'BRIEN, J.; MARTIN and VANN, JJ., concur with BARTLETT, J.

Judgment reversed, etc.