CHARLES H. SHELTON, DEFENDANT IN ERROR, v. ERIE RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued March 16, 1906—Decided March 26, 1907.

1. The expulsion from a railroad train of a person who refuses to pay to the conductor any fare other than the tender of a limited ticket that on its face has expired, is not actionable.
2. This rule is not altered by the fact that the passenger has paid for such ticket the full rate for which the railroad company should have given him an unlimited ticket; nor does the communication of this fact to the conductor render the expulsion of the passenger for non-payment of fare actionable.
3. In the determination of a passenger's right to travel under a railroad ticket tendered by him to the conductor in payment of his fare, conclusive force is to be given to the intrinsic effect of such ticket to pay such fare as expressed on its face.
4. *Perrine* v. *North Jersey Street Railway Co.*, 40 *Vroom* 230, overruled.
5. Section 38 of the General Railway law is constitutional.

---

On error to the Circuit Court.

For the plaintiff in error, *Cortlandt & Wayne Parker* and *Chauncey G. Parker.*

For the defendant in error, *Arthur H. Bissell.*

The opinion of the court was delivered by

GARRISON, J. This suit is grounded upon the plaintiff's expulsion from a railroad train under the following circumstances: On December 17th, 1903, the plaintiff, being a passenger on the defendant's train from Montclair to Upper Montclair, a distance of one and three-quarter miles, tendered to the conductor in payment of his fare a ticket that bore date December 15th, 1903, and read as follows: "Good only for continuous passage Montclair to Upper Montclair beginning on day of sale or the next day." The ticket had been sold to the plaintiff on December 15th, and hence by its terms had expired. Upon being informed by the conductor that under the rules of the company the ticket could not be accepted for fare after the date of its expiration, the plaintiff refused to pay any other fare, and when told that under the rules he must in that case leave the train, replied that he would not do so unless legal force was used. When the train reached the next station the conductor placed his hand on the plaintiff's shoulder and the two walked to the rear platform of the car, and when the train had stopped at the station the plaintiff stepped down on the bottom step, from which, before the train moved off he was given "a last push" by the conductor. For this expulsion the plaintiff brought his action in tort against the railroad company and recovered substantial damages.

Other facts are that the plaintiff had paid ten cents for his ticket, for which price he should have been given a ticket that was not limited; that the limitation printed on the ticket was one the defendant could not lawfully impose, and that the limitation had not been noticed by the plaintiff. Whether tickets without such limitation were issued by the defendant and on sale at its ticket offices did not appear.

The plaintiff also testified that he had with him twenty cents, the amount of the fare and excess fare demanded of him by the conductor, but that "he had paid the full price and refused to pay over again."

The right of the plaintiff to maintain his present action upon the foregoing facts is directly raised by assignments of error based on exceptions to the court's refusal to nonsuit the plaintiff or to direct a verdict for the defendant.

Upon the facts stated it is entirely clear that whatever injury the plaintiff suffered at the hands of the defendant had its origin in the delivery to him by the ticket agent of a ticket that was limited as to the time when it must be used, whereas for the price that he paid he ought to have been given a ticket that was not so limited. It is equally clear that the present suit is not grounded upon this injurious act of the defendant or its ticket agent, but upon the conductor's denial of the plaintiff's right to travel upon the ticket that was presented to him, viz., a ticket that on its face negatived the right that was claimed under it by the plaintiff. The precise question, therefore, is whether a passenger who has been expelled from a train for refusing to pay his fare may maintain an action for such expulsion if previously thereto he had tendered to the conductor a ticket that on its face was not receivable for his fare, provided that he had accompanied such tender with the true statement that he had paid for such ticket the full rate for which a proper ticket ought to have been issued to him. In still narrower form the question is whether the rule that permits the expulsion of a passenger who neither pays his fare nor tenders a ticket that shows his right to ride is abrogated or modified by the circumstances that were communicated to the conductor in the present case.

While this question is one of first impression in this court, the underlying proposition that a passenger may lawfully be ejected for non-payment of fare must be taken to be entirely established in this state. That "railroad companies are not bound to carry a passenger unless upon payment or tender of his fare; that they may in such case either refuse to per-

mit him to enter the cars, or having entered them they may require him to leave them before the termination of the journey, and that if he refuses to leave they may remove him at a suitable time and place, using no unnecessary force," were, more than half a century ago, treated by Chief Justice Green, in *State* v. *Overton, 4 Zab.* 435, as unquestioned propositions from which to reason with respect to a questionable regulation. The criticism of this case in *Daniel* v. *New Jersey Street Railway Co.,* 35 *Vroom* 603, left untouched these basic propositions, which, indeed, are not now questioned anywhere.

In other jurisdictions, for whose decisions we entertain the highest respect, the question we are now called upon to decide has been passed upon in a large number of cases.

In a recent case in the Federal Court of Appeals, Judge Taft said: "The law, settled by the great weight of authority, * * * is that the face of the ticket is conclusive evidence to the conductor of the terms of the contract of carriage between the passenger and the company." *Pouilin* v. *Canadian Pacific Railroad Co., 52 Fed. Rep.* 197.

The Supreme Judicial Court of Massachusetts, in *Bradshaw* v. *South Boston Railroad Co., 135 Mass.* 407, held that "it is a reasonable practice to require a passenger to pay his fare or show a ticket, * * * and it would be unreasonable to hold that a passenger, without such evidence of his right to be carried, might forcibly retain his seat in a car upon his mere statement that he is entitled to passage. If the company has agreed to furnish him with a proper ticket and has failed to do so, he is not at liberty to assert and maintain by force his rights under that contract, but is bound to yield for the time being to the reasonable practice and requirements of the company, and enforce his rights in a more appropriate way."

In a later case (*Dixon* v. *New England Railroad Co.,* 179 *Mass.* 242), the same court said: "The passenger's right to transportation is no greater than the right and duty of the conductor to enforce reasonable rules, and for the time being the passenger must bear the burden which results from his

failure to have a proper ticket. A passenger may have a right to transportation between certain stations because of his connection with a certain ticket, and yet if the ticket itself is not in order a conductor is not bound to take it in payment of fare."

In *Stockdale's Case*, 83 *Md.* 245, the Court of Appeals of Maryland held that "in all cases when the question as to the right of a passenger to travel arises between him and the conductor of a train the ticket is necessarily the conclusive evidence of the nature and extent of the passenger's right."

"No other rule," said Judge Cooley, in *Hufford* v. *Grand Rapids Railway Co.*, 53 *Mich.* 118, "can enable the conductor to determine what he may or may not lawfully do in managing the train and collecting fares." And on another occasion the same court held that "when a passenger receives a defective ticket from an agent of the company by reason of the mistake or negligence of the agent the conductor may refuse to accept such ticket, and is authorized to compel the passenger to leave the train if payment of fare is refused."

The New York Court of Appeals, in *Monnier* v. *New York Central and Hudson River Railroad Co.*, 175 *N. Y.* 281, said: "A person who becomes a passenger in a public conveyance must subordinate his conduct to all rules that are reasonable and valid. The simple duty of the conductor is to execute and enforce all reasonable rules, and that of the passenger is to obey them. If there is some fact or omission behind the rules not apparent upon the face of the transaction, the passenger must resort to some other remedy for his grievance besides the use of force against the conductor; and if under such circumstances he invites a personal collision with the officer in charge of the train, resulting in his forcible expulsion, he puts himself in the wrong and cannot sue the company or the officer for assault and battery."

In *Kiley* v. *Chicago City Railway Co.*, 189 *Ill.* 384, the Supreme Court of Illinois held that "the conductor was ordered by his superior not to receive a ticket like the one presented. This order he was bound to obey, and when the passenger was notified by the conductor that his ticket was

not good and would not be received, it was his duty to leave the train in a peaceable manner and hold the company responsible for the consequences.    *    *    *    The passenger should seek redress in the courts, where he will find a complete remedy for every indignity offered and for all damages sustained."

The Supreme Court of Michigan, in *Brown* v. *Rapid Railway Co.,* 134 *Mich.* 591, held that "the rule of law in this state has been settled that as between the conductor of a railway train and the passenger it is incumbent upon the passenger to produce as a ticket one which is apparently good on its face or pay the fare in cash, and that failing to do this the conductor has the right to eject the passenger from the car."

In *McKay* v. *Ohio River Railroad Co.,* 34 *W. Va.* 65, the Supreme Court of Appeals of West Virginia said: "If a passenger pays a railroad agent fare for a certain trip and by mistake of the agent is given a ticket not answering for that trip, but one in an opposite direction, and the conductor refuses to recognize such ticket and demands fare, which the passenger fails to pay, ejection of the passenger from the train without unnecessary force will not be a ground of action against the company as a tort."

The Supreme Court of Alabama, in *McGhee* v. *Reynolds,* 117 *Ala.* 413, held that "as to the right of a conductor to eject a passenger who is found riding on a train on a ticket void on its face, it is proper to say, and we may announce without elaboration as the proper conclusion sustained by the great weight of authority, that the ticket is the sole and conclusive evidence to the conductor of the passenger's rights as such to be on the train,    *    *    *    and when it is void on its face, in default of payment of fare, he may deny the right of the passenger to ride on such ticket and expel him in a proper manner from the train."

These cases, and a host of others that might be cited, concur in holding the general doctrine that the expulsion by a conductor of a passenger who neither pays his fare nor tenders a ticket that evinces his right to carriage is, in the

absence of unnecessary force, not actionable.   6 *Cyc.* 551; 5 *Am. & Eng. Encycl. L.* 594; 28 *Id.* 156; 4 *Ell. Rail.*, § 1594.

To the doctrine thus stated we yield entire assent.   Many of the cases cited, however, by reason of the facts involved or by force of the line of reasoning pursued, go further than we are required to go in the decision of the present case.   In order, therefore, that there may be no uncertainty as to the scope of our decision and the ground upon which it rests, it is deemed best that such ground be explicitly stated.

Railroad companies, as they exist in this country, are corporations in which private capital is embarked in public, *i. e.,* common carriage.   These corporations possess, therefore, a dual nature—having in trust, on the one hand, the financial interests of their stockholders, and, on the other, the convenience and safety of the traveling public.   The two agents of these corporations with which alone the public comes in contact, viz., the ticket agent and the train conductor, represent, roughly, these two corporate capacities.

Hence the transaction by which a traveler purchases a ticket from one of these agents for presentation to the other is likewise of this same dual nature, and involves an observance on the part of the passenger of all reasonable regulations established for the conduct of each of these departments. These regulations are simple, uniform and well understood by the public.   The ticket agent sells tickets for cash; he cannot give credit; his authority over the business of his company is limited to the issuance of such tickets as have been placed in his hands for that purpose, as incidental to which he may hand out time-tables and give such information to prospective passengers as may aid them in the selection of the tickets they require, *i. e.,* tickets that will pay the fare between the points they designate.   The obligation of the company with respect to the acts of this agent is that he shall deliver to passengers the tickets for which they ask and pay; if this is not done, whether the fault be that of the agent or the company, this obligation is broken and the com-

pany is liable for the damages that result therefrom. The case before us is an illustration of such a breach.

The agency of the train conductor is even more limited, for it is all comprised in his duty to collect a fare from every passenger or to eject him from the train.

The fare thus to be collected by the conductor may be a cash sum or it may be a ticket; that is for the passenger to determine. If the passenger proposes to pay in cash, he must be provided with and tender to the conductor a sum that under the established rules of the company is sufficient to pay his fare; if he proposes to pay by ticket, he must be provided with and tender a ticket that under the established rules of the company has the intrinsic effect of paying such fare. This intrinsic attribute of the ticket is the essential quality to which it owes its efficiency. It is the possession of this attribute that distinguishes a ticket from a contract, on the one hand, and from a mere instrument of evidence, on the other. And I may say here that the failure to emphasize this essential feature of a railroad ticket is the chief reason for our unwillingness to place our decision solely upon the authority of the cases that have been cited; in most, if not all, of which the efficiency of such ticket is referred in a somewhat vague way to a hypothetical contract, the precise nature of which is necessarily involved in obscurity.

That this essential attribute of a railroad ticket did not escape the acute observation of Chief Justice Beasley is evident from his careful ·description of such a document in the opinion delivered by him in *Petrie* v. *Pennsylvania Railroad Co.,* 13 *Vroom* 449. "The plaintiff," he said, "had a passenger ticket, issued by the defendant, which *on its face and according to its intrinsic effect* did not authorize him, after having stopped at a place intermediate the designated termini, to use it for the purpose of continuing his journey." This language, which might well stand as a definition, not only recognizes that a railroad ticket has the intrinsic effect expressed on its face, but also that it may have an intrinsic effect that is not so expressed. This is a valid distinction, since it marks the difference between inspection and interpre-

tation as modes for determining the effect to be given to pass-
ports of this nature. The implication is that such effect,
when not expressly stated, is to be gathered from the well-
known customs of the business of which the ticket forms a
part. A postage stamp is a good illustration of such mode of
interpretation, or still better a special delivery stamp. Noth-
ing on the face of these documents expressly states the effect
of either of them, but the well-known custom of which they
are a part interprets them to the public and to postal agents
alike. Theatre tickets afford another familiar example, espe-
cially the return checks issued during a performance, which,
though they may contain only the advertisement of some
business house, are interpreted by custom to secure the return
of the holder to the theatre on the night of their issue. Upon
a far more extensive scale, promissory notes became early in
the history of English law subject to be interpreted solely
by the business customs of merchants. Whether I am correct
or not in these views as to the interpretation of railroad tickets
is, however, of no immediate importance, since in the pres-
ent case the plaintiff's ticket called for no interpretation, for
the reason that it expressed on its face the intrinsic effect to
be given to it. The subject, which is one of great impor-
tance, is discussed at length and in a most suggestive way by
Professor Beale, in an article on "Tickets," in 1 *Harv. L.
Rev.* 20.

For present purposes, we need to go no further than to say
that in the determination of a right to travel under a railroad
ticket tendered as fare, conclusive force is to be given to the
intrinsic effect of such ticket as expressed on its face. Such
was the force given to it by Chief Justice Beasley in the case
just cited, and by Mr. Justice Van Syckel in *Spiess* v. *Erie
Railroad Co.,* 42 *Vroom* 90, where the judgment was reversed
because the lower court had left it to the jury to say "whether
the plaintiff believed he had a right to use the ticket." Such
was the force accorded to the ticket in *Rogers* v. *Atlantic
City Railway Co.,* 28 *Id.* 703, where Mr. Justice Lippincott,
speaking for this court, said: "The ticket is the conclusive
evidence of the contract of carriage upon which the conductor

had the right to rely." And in the recent case, in this court, of *McDonald* v. *Central Railroad Co., 43 Id.* 280, which was a time-table case, and not one of the non-payment of fare, the decision that the plaintiff's expression was unlawful was entirely consistent with the face of his ticket.

This intrinsic effect of a railroad ticket was also recognized in the opinion of Chancellor McGill, in this court, in the case of *Parry* v. *Pennsylvania Railroad Co., 26 Vroom* 551, when he said: "The ticket is a mere token that fare has been paid and that the passenger has the right to be carried to the destination it indicates, according to the reasonable regulations of the railway company." For a token is a symbol that betokens something, *i. e.,* that carries within itself that which it signifies, which is in effect a paraphrase of the significant term in Chief Justice Beasley's description.

The only case in our courts, as far as I can discover, that is out of harmony with these views, is *Perine* v. *North Jersey Street Railway Company,* decided in the Supreme Court and reported in a *per curiam* in 40 *Vroom* 230. In that case the passenger tendered a transfer ticket that under the rules of the defendant had expired, and was ejected for refusing to pay a fare. The question we are now considering was therefore squarely raised. Judgment in favor of the plaintiff was sustained solely upon the authority of *Consolidated Traction Co.* v. *Taborn, 29 Id.* 1. The Taborn case, however, was not an authority for the proposition for which it was thus cited, and has no bearing upon the question we are considering. In the Taborn case the plaintiff was expelled because she had no ticket, hence neither the intrinsic effect of a ticket nor its proper interpretation could possibly arise. What the Taborn case held was that where the company, for its own convenience, had established a custom of transferring its passengers to another car because of a temporary break in its road, a change of rules promulgated without notice on the very day the plaintiff was expelled, was as to her an unreasonable regulation. The Perrine case was therefore unsupported by the only authority cited for that purpose, and being, as we

think, erroneously decided, must be deemed to be overruled by our present decision.

In the light of the foregoing considerations, the grounds for our adoption of the rule that the face of a railway ticket, when it speaks upon the subject, is conclusive upon its sufficiency as a railroad fare, should be clear. That this rule, although upon somewhat variant grounds, is established elsewhere by the great weight of authority, was stated at the outset of our consideration of the subject.

In the citation of cases then made there was an intentional omission of those cases that hold the opposite view, and for this reason, viz., that such cases are without exception, as far as my examination goes, based upon one or the other of two radically unsound propositions, according to which they may be conveniently grouped for criticism.

By far the greater number of the cases thus referred to proceed upon the idea that the delivery of a wrong ticket by the ticket agent or the giving of misleading information establishes a contractual right between the injured passenger and the railroad company for the breach of which the train conductor must afford redress upon a summary investigation. The fundamental fallacy of this position is that it assumes the authority of ticket agents to make contracts for railroad companies. The authority of such agents is notoriously limited to the sale of tickets and to the doing of acts that are ancillary thereto. By no rule of the law of agency or of evidence can the acts or statements of a ticket agent beyond the scope of his limited authority be erected into a contract binding upon the railroad company. What has been mistaken for this authority to make contracts is the ability of these agents to make trouble for their companies by their negligence in the delivery of tickets or their mistakes in giving information. For injury resulting from these acts of the ticket agents their principals may, as we have already seen, be held liable in an appropriate action.

The judicial conclusions that have been constructed on this erroneous foundation do not in any way commend themselves to us.

The other proposition that has been characterized as unsound is that the purchase of a ticket by a passenger is the payment of his fare. Such was the precise claim of the plaintiff in the present case. The fallacy of this proposition must be apparent. It is one of fact. Payment of fares is made to the conductor alone. This is true whether such fare be by cash or by ticket. Ticket agents do not collect or receive fares; they issue tickets. A fare is a payment that is made when the right of carriage is claimed. The very word "fare" originally meant "a journey." *Webs. Int. Dict.* Such is still its connotation.

When a ticket is accepted by the conductor it becomes a fare, but not before. In the case of Parry v. Pennsylvania Railroad Co., above cited, the plaintiff's ticket had been accepted as fare for part of his return trip, hence the statement (Chancellor McGill, *ubi supra*) that it was a token that fare had been paid was strictly correct.

The failure to observe this distinction has resulted in a line of decisions which, while recognizing the right of the conductor to expel a passenger for non-payment of fare, hold that the company is liable for such expulsion if in point of fact, to use the language of these cases, "the passenger has paid his fare to the ticket agent." Extended comment upon this line of reasoning is believed to be unnecessary.

Our conclusion upon the whole case is that the plaintiff was lawfully expelled from the train for non-payment of fare, and that for such an expulsion no action can be maintained. The facts upon which this conclusion rests having all appeared at the close of the plaintiff's case, the motion for nonsuit then made should have been granted. The judgment must therefore be reversed.

In the preliminary statement of the plaintiff's case the limitation placed upon his ticket was said to be one that it was not lawful for the railroad company to impose. That statement embodied the decision we had reached upon a question raised by the railroad company touching the constitutionality and construction of the thirty-eighth section of the

General Railroad law (*Pamph. L.* 1903, *p.* 664), which reads as follows:

"Any railroad company may demand and receive such sums of money for the transportation of persons on its railroads and connections, and for any other services connected with the business of transportation of persons on or over said railroad or to or from the same, as it shall from time to time think reasonable and proper, not exceeding, in the case of railroad companies *organized under this act,* three cents per mile for carrying each passenger on such railroad, and not exceeding, in the case of railroads constructed or operated under a special charter, three and a half cents per mile for carrying each passenger on such railroad, and not exceeding the rate per mile limited by the charter, but no charge shall be required to be less than ten cents; tickets for passengers, except excursion tickets or tickets sold at reduced rates, shall be good until used; tickets sold at less than the rates *herein limited* shall be good and shall entitle the holder to passage for a limited number of days only after the date of issue thereof, which limit shall be clearly stated and set upon the ticket; any railroad company owning or operating a railroad may collect an excess of ten cents over the established rate of fare from any passenger who pays his fare on the train, giving him a receipt therefor, which shall entitle the holder to have such excess refunded upon presentation at any ticket office of the company on the line of its railroad."

The argument for the company was that the charter of the Montclair Railway Company, under which the plaintiff in error was operating, authorized a charge of eight cents per mile, hence it was contended the ticket in question was issued at a reduced rate, and might lawfully be limited. This argument rests upon the contention that the foregoing section of the General Railroad law is either unconstitutional or has no application to the case. Neither of these claims is, in our opinion, well founded.

That the legislature could by an appropriate enactment alter the charter of the Montclair Railway Company seems

to be clear. *Montclair* v. *New York and Greenwood Lake Railroad Co.,* 18 *Stew. Eq.* 436; *Pamph. L.* 1885, *p.* 324.

This being so, we think that section 18 of the General Railroad law is not rendered unconstitutional by reason of the provision that railroads constructed and operated as the plaintiff in error is, under a special charter, are permitted to charge one-half cent more per mile than railroads organized under the general act are permitted to charge. The argument is that this discrimination, which in itself is favorable to the plaintiff in error, is based upon an illusory classification. The classification is "railroad companies organized under this act" (the General Railroad law) and "railroads constructed and operated under a special charter." The former of these classes is rendered general, for purposes of railroad legislation, by section 88, hence it must follow that the residue left, after subtracting this general class from the entire class, is also general for the like purpose. *Point Breeze Ferry Co.* v. *Bergen Neck Railroad Co.,* 24 *Vroom* 108.

The contention that the words "good until used" does not mean good "for passage," is, in our judgment, entirely untenable.

Having reached the conclusion that section 38 of the General Railroad law was constitutional; that it applied to the plaintiff in error, and that its effect was to render unlawful the limitation placed on the ticket that was delivered to the plaintiff below, we embodied such result in our original statement of facts, and have throughout the discussion of the case given it consideration in so far as it bore upon the legal questions at issue.

For the reasons already stated, the judgment of the Circuit Court is reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL. 14.