ALFRED A. WRIGHT, DEFENDANT IN ERROR, v. ORANGE AND PASSAIC VALLEY RAILWAY COMPANY, PLAINTIFF IN ERROR.

Submitted March 23, 1909—Decided July 2. 1909.

Where a passenger on a street car is entitled by his contract to be carried to a certain point, and the railway company breaks the contract by turning the car back at a point short of the destination, the passenger's right of action is complete; and if he elects to remain on the car for its return journey, he must pay the fare and may include the amount in his damages; he is not entitled to remain on the car without payment of fare.

---

On writ of error to the Essex Circuit Court removing judgment for plaintiff.

For the plaintiff in error, *Leonard J. Tynan* and *Chauncy H. Beasley.*

For the defendant in error, *Samuel Kalisch* and *Frederick M. Payne.*

The opinion of the court was delivered by

MINTURN, J. Three cases, involving the same question, arising out of an alleged trespass *vi et armis* by defendant through its conductor upon plaintiffs, respectively, were tried together, and the determination of the fundamental question involved in the case *sub judice,* it is stipulated between counsel, shall be dispositive of the other two cases. The material facts constituting the concrete case are not in dispute. The plaintiff and his two sons resided at Montclair, near Eagle Rock, from and to which place they went and returned each working day in the course of their business, using defendant's street railway car upon their return by transfer from Orange. On February 15th, 1906, the plaintiff boarded at Orange a car upon which the sign "Eagle Rock" was displayed. The cars upon this route, owing to the condition of the tracks at that period, had not been running to Eagle Rock for some days, but stopped at a place called Valley Way, which is in the neighborhood of a mile below the former place. At Valley Way the conductor turned the trolley pole, and notified plaintiff that the car would proceed no further. Plaintiff then said, "We have transfers to Eagle Rock," and the conductor replied, "Well, we don't go any further," and, he continues, "he came around and demanded our fare, and we would not pay any more fare, so they dragged us off the car," which at that time was on its way back towards West Orange. The alleged trespass was of a nominal character, and no claim is made that serious injury resulted to plaintiff therefrom. At the trial the plaintiff's counsel limited the issue by the statement: "We stand upon the assault and battery counts in each declaration. We rely upon so much of the facts in each of the counts as constitutes a cause of action, and that is the wrongful ejection from the car." This narrowed the issue

to the determination of the question whether the ejection of plaintiff from the car was wrongful. The defendant met this claim by insisting that, after request made upon plaintiff for his fare and his refusal to pay, he became *ipso facto* a trespasser, and upon his refusal to alight the right inured to defendant to eject him.

It must be conceded that if the legal *status* of plaintiff, under the circumstances, was that of a trespasser, the right of ejection might be properly exercised by defendant, and proof of that fact at common law, conjoined with the plea *molliter manus imposuit,* would afford a complete defence to the action. 1 *Chit. Pl.* 535; *Gates v. Lounsbury, 20 Johns.* 427.

The plaintiff insists that he was not a trespasser, but had a legal right to remain on the car, because the company had failed to perform its contract to carry him to Eagle Rock. He does not claim that he was entitled to be carried back free to his starting point, but stands upon a right, as he claimed to the conductor, "to stay on that car until it went to Eagle Rock." The trial judge charged that the question for the jury was whether the plaintiff was warned when he got on the car that it would not go through to Eagle Rock. We think this was erroneous. The failure to warn him when he got on the car would, under the circumstances of this case, justify an inference that the company had contracted to carry him to Eagle Rock, but the plaintiff's remedy for breach of that contract was an action for damages, and that right of action was complete as soon as the company abandoned the trip and turned the car back. The plaintiff was not obliged to stay on the car any longer to test the readiness of the company to perform its contract. And his remedy for the breach of contract did not include a right to stay on the car indefinitely. He had his election when the car came to the end of its actual trip to leave and sue for damages, or to make a new contract for carriage on the return trip, and add its cost to his damages, subject, of course, to the rule which requires one to minimize his damages. He chose the latter alternative; having done so, he became bound to pay his fare to the con-

ductor, who had no authority to carry him free. This is the effect of our decision in *Shelton* v. *Erie Railroad Co.*, 44 *Vroom* 558. There is nothing in *McDonald* v. *Central Railroad Co.*, 43 *Id.* 280, that supports the plaintiff's contention. What we there decided was that where the passenger's contract entitled him to be carried to Chester by the train on which he began his journey, he was not bound to get off at an intermediate station merely because the conductor told him the train would not stop at Chester; he was entitled to make reasonable efforts to exercise his right. So in this case the plaintiff was entitled to stay on the car until he knew that the defendant had finally determined not to run it to Eagle Rock. As soon as the company so determined and started the car on its return trip, his right of action was complete, but his right was a right to damages merely, not a right to occupy the car indefinitely. The right claimed by him would, in effect, deprive the company of the management of its own car, and make the plaintiff a tenant in common. The law of self-help has never been extended as far as that, and, in contemplation of law, damages are a sufficient redress for a private wrong.

The early common law is replete with recorded instances, illustrative of the rule that under such circumstances the abuse of a legal right or privilege, which accrued originally as the result of a contract or a legal obligation or a duty imposed by law, terminable at a certain period, places the transgressor in the *status* of a trespasser. Thus Rolle, in his abridgment, instances the case of a lessor who enters to view for waste and stays all night; of the commoner who lawfully enters the common and cuts down trees; of a man who enters an inn and continues all night against the will of the taverner. 2 *Rol. Abr.* 561, *pl.* 2.

So, in a recent case, where a passenger remained upon a train for an unreasonable time after it reached its destination, he thereby ceased to be a passenger. *Chicago Railroad Co.* v. *Frazer*, 55 *Va.* 582. In like manner—*Brenner* v. *Jonvston Railroad Co.*, 82 *Ark.* 128; 12 *Eng. & Am. Anno. Cas.* 489; *Ripley* v. *New Jersey Railroad and Transportation Co.*, 2 *Vroom* 388; *Imhoff* v. *Chicago M. Railroad Co.*, 20 *Wis.* 344;

6 *Cyc.* 541, and cases cited—afford instances illustrative of the principle that the legal *status* of the plaintiff was that of a trespasser. At the very basis of these decisions, in denial of the plaintiff's right, is the fundamental ethical as well as legal maxim, *Nemo ex proprio dolo consequitur actionen.* *Ellen* v. *Topp, 6 Exch.* 424.

So from this *status* was evolved that privilege which found judicial recognition as early as the Year Books, and which conceded to every owner whose property is unlawfully invaded the right, after reasonable demand, to eject therefrom the tort-feasor. *Case of the Tithes,* 1 *Y. B., Hen. VII.* (1507), 27 *Pl.* 5; *Entich* v. *Carington,* 19 *How. St. Tr.* 1029; *Ilott* v. *Wilkes,* 3 *Barn. & Ald.* 308; *State* v. *Moore,* 31 *Conn.* 479.

So, also, in the case at bar, the right of defendant, through its agents, to eject the plaintiff from its car, after his refusal to avail himself of the condition which, by right of contract, would have given him a legal *status,* cannot be successfully controverted, in the light of uniform adjudication, wherever the common law is recognized as the law of the land. *State* v. *Overton,* 4 *Zab.* 435; *Jardine* v. *Cornell,* 21 *Vroom* 485; *Manning* v. *L. & N. Railway Co.,* 16 *L. R. A.* 55 (*Alabama Supreme Court*); *Chicago, B. & L. Railway Co.* v. *Wilson,* 23 *Ill. App.* 63; *Bradshaw* v. *South Boston Railroad Co.,* 135 *Mass.* 407; *Sanford* v. *Eighth Avenue Railroad Co.,* 23 *N. Y.* 343.

For these reasons the judgment in this case is reversed, and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, J.J.    13.