JOHN O. WILSON, PLAINTIFF IN ERROR, v. WEST JERSEY
AND SEASHORE RAILROAD COMPANY ET AL., DE-
FENDANTS IN ERROR.

Submitted July 8, 1912—Decided November 18, 1912.

The authority of a ferry ticket collector to represent his company in
the collection of ferriage at its entrance gates, is limited to the
collection from each passenger of either cash or its equivalent,
*i. e.*, a ticket valid upon its face for ferry passage, and where the
statements of the passenger as to the use of his ticket conflict
with its face marks, the collector is not authorized to either in-
quire into or decide upon the truth of such statements, but must
be governed solely by the intrinsic effect of the ticket as ex-
pressed on its face at the time of its tender for passage.

On error to the Camden County Circuit Court.

For the plaintiff in error, *Wilson & Carr.*

For the defendants in error, *Gaskill & Gaskill.*

The opinion of the court was delivered by

VREDENBURGH, J.  The plaintiff, a lawyer, residing in Col-
lingswood, New Jersey (distant a few miles from Camden),
purchased from the West Jersey and Seashore Railroad Com-
pany a series of tickets which entitled him to passage, in either
direction by boat, over the ferry between Philadelphia and
Camden, and from the latter city by train upon the defend-
ants' railroad to Collingswood.

The tickets consisted of two separable parts, one part in blue color, applicable to the ferry trip, and the other in white, applicable to the railroad passage. On the Camden side of the river, in addition to the ferry entrances, there is a train gate so situated that a passenger after being admitted within this train gate could take the boat and cross the river to Philadelphia, or take a railroad train to Collingswood and other points in New Jersey, and all passengers passing through this gate were required, by the regulations of the company, to have their railroad tickets examined and punched by the ticket collector there stationed for that purpose. The tickets were punched by a distinguishing cancellation mark, by the use of a punch making a small cut through the ticket of a crescent design "C." Special written instructions had been issued, under date of May 23d, 1908, by the defendants to their ticket collectors, who collected ferry tickets on the Philadelphia side of the river, that they "should bear in mind that 'C' cut must be regarded by them as indicating that ferry passage *has been taken,* the same as the ordinary round cut."

On the afternoon of May 16th, 1911, the plaintiff, being in Camden, presented his blue ferry ticket at the entrance gates of the ferry to the ticket collector there, who canceled the ticket by punching a cut through it of the shape of a "C," and, having returned it to the plaintiff, admitted him through the gates. The latter, however, finding, as he testified, that his train to Collingswood had gone, says he took neither train nor ferry-boat, but retaining his canceled ticket, used another mode of conveyance from the ferry-house.

On the evening of the same day the plaintiff, having gone to Philadelphia and intending, he says, to cross the river and take a train to his home, entered the Market street ferry-house and offered, for his ferriage, to the collector of ferry tickets there, the blue canceled ferry ticket he had retained, which the collector refused to accept, and at the same time told the plaintiff that it was not good for his ferriage because of the crescent punch mark upon it. Notwithstanding this refusal, the plaintiff, asserting that he had not used the ferry ticket for either ferriage or train, and claiming his right to use it,

entered the ferry-boat. While he was standing upon the boat, and before it had left the Philadelphia side, an employe of the ferry company went to him and notified him that he had not paid for his ferry passage and would have to get off the boat. He declined to do so and his ejection from the boat immediately followed. The present action is brought by him to recover damages for such ejection.

From what has preceded it will be seen that the defendants' agent in refusing to accept the canceled ferry ticket as a payment for ferriage, acted upon the above-stated instructions of the company to him requiring him to treat the plaintiff's ferry ticket (marked on its face a "C" cut) as indicating that ferry passage had been taken upon it, and, consequently, as invalid as a tender for future ferriage.

Unless we are prepared to hold that it was the duty of the ticket collector at the entrance gate to accept the statement of the plaintiff that he had not used the tendered ticket for prior passage as correct, notwithstanding the contradiction implied by the *face* marks on his ticket, it must be conceded, I think, that he is without legal standing here. The practical difficulties of a ticket collector correctly ascertaining at the ferry gates during the rush of such travel at these congested entrances, whether a canceled ticket has been used by a passenger for a previous trip or not, obviously forbid such an inquiry, and demonstrate the reasonableness of the defendants' instructions in that regard.

It should not escape attention that it appeared by the evidence in the case that under what was called a prescribed custom of the company, in cases where the passenger, after the cancellation of his ticket, and his admission within the ferry-shed, had not chosen to take a ferry-boat, he was entitled, upon application to the ticket collector who had canceled his ticket, to have it validated for a future ferry trip by that officer, by his putting an encircling mark upon the face of the ticket around the cut "C," together with the initials of his name.

But this course not having been pursued by the plaintiff, it is evident that his right to ferry passage upon his ticket, as it

then existed in his hands, rests entirely upon the proper effect the ferry ticket collector was required, in the performance of his duty to his company, to give to the canceled ticket as tendered him. And such right we must now determine without regard to the fact whether the plaintiff had or had not used his ferry ticket for previous ferry passage.

The ferry ticket collector was certainly not an agent selected by the company to look behind and beyond its written instructions to him in order to determine its legal rights in such regard, nor to represent it in contests involving the reasonableness or validity of its ticket regulations.

In the recent case, in the Supreme Court, of *Ervin* v. *Burke, ante p.* 28 (in which the right of a conductor of a street railway car to eject a passenger who refused to pay his fare was involved), this important principle is considered and decided in favor of the railway company.

Mr. Justice Garrison, in his opinion delivered in that case, pointedly remarks that "controversies of this nature are not to be settled in a wrangle between a passenger and the conductor over the payment of a fare."

That case followed the unanimous decision of this court in *Shelton* v. *Erie Railroad Co.,* 44 *Vroom* 558, where the same skilled judge delivered the opinion of that court. After a very thorough exposition of the legal principles there involved (which are also now presented by the case in hand) it was held, that the expulsion from a railroad train of a person who refused to pay the conductor any fare other than the tender of a limited ticket that on its *face had expired* was not actionable.

In the case of *Wright* v. *Orange Valley P. V. Ry. Co.,* 48 *Vroom* 774, the foundation of the right of railway companies to treat as trespassers those who insist upon riding in their cars, but refuse to pay fare, is traced, by Mr. Justice Minturn, to early common law principles.

These decisions, supported as they are by a long line of authority referred to by them, have settled the law upon this subject.

The duty of the ferry ticket collector toward a passenger in case of his non-payment of ferriage in cash, or of a tender of a valid ticket in lieu of cash, is strictly analogous to that of the railroad train conductor under like circumstances. Their authority to represent the carrying companies is limited to the collection from the passenger of either cash, or its equivalent, *i. e.,* a ticket, *valid upon its face* for passage. Where the statements of the passenger conflict in such regard with the face of his ticket, the ferry ticket collector is not authorized to either inquire into or decide as to the truth or correctness of such statements, but must be governed entirely by the intrinsic effect of the ticket as expressed on its face at the time of its tender.

What remedy the plaintiff might have against the ferry company in the event it should refuse to redeem the canceled ticket, upon his proper application to it, and proffer of proof that he had not made use of the ticket for an actual ferry trip, we are not now called upon to decide.

For the reasons above stated the judgment below, which was for the defendants, is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, TREACY, JJ. 14.

*For reversal*—None.